Lisa K. ALBERTE, Plaintiff-Appellant,

v.

ANEW HEALTH CARE SERVICES, INC. and Sally Sprenger,
Defendants-Respondents-Petitioners.

Supreme Court

*No. 96–3225. Oral argument November 30, 1999.—Decided
February 8, 2000.*

## 2000 WI 7

(Also reported in 605 N.W.2d 515.)

For the defendants-respondents-petitioners there were briefs by *Arthur E. Beck, Katherine L. Williams* and *Beck, Chaet, Molony & Bamberger, S.C.*, Milwaukee, and oral argument by *Katherine L. Williams*.

For the plaintiff-appellant there was a brief by *John E. Uelmen* and *Fair Employment Legal Services, S.C.*, Milwaukee, and oral argument by *John E. Uelmen*.

An amicus curiae brief was filed by *Timothy G. Costello, Mark A. Johnson*, and *Krukowski & Costello,*

*S.C.*, Milwaukee, for Wisconsin Manufacturers & Commerce.

¶ 1. JON P. WILCOX, J. The question presented in this case is whether Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e(17) (1994), (Title VII), and the Americans with Disabilities Act, 42 U.S.C. §§ 12101–12213 (1994),[1] (the ADA), subject employers' agents to personal liability for their discriminatory acts. In a published decision, *Alberte v. Anew Health Care Services, Inc.*, 223 Wis. 2d 1, 5, 588 N.W.2d 298 (Ct. App. 1998), the court of appeals determined that these statutes subject agents to individual liability. The defendants petitioned for review. Because we conclude that Congress did not intend to hold agents personally liable under these statutes, we reverse the decision of the court of appeals.

## I. Facts and Procedural Background

¶ 2. The facts material to the narrow issue in this case are brief. During 1992, Lisa K. Alberte was employed by ANEW Health Care Services, Inc. (ANEW), a corporation that provides skilled nursing services. Alberte's supervisor, Sally Sprenger, was also the President and 47.5% owner of the corporation. On December 10, 1992, Sprenger discharged Alberte from her employment at ANEW.

¶ 3. Alberte subsequently filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC), and the EEOC authorized her to commence a civil action. Alberte sued ANEW and Sprenger, alleging that they violated Title VII and the

---

[1] All subsequent references to the United States Code refer to the statutes in effect in 1994 unless otherwise indicated.

ADA by failing to reasonably accommodate her disability (a back condition), retaliating against her, and terminating her employment. The suit specifically alleges that Sprenger was serving as ANEW's agent when these actions took place and seeks to hold Sprenger personally liable for her alleged discriminatory actions.

¶ 4. After the defendants' request to remove the case to federal court was denied, the defendants filed a motion for partial summary judgment in the circuit court for Milwaukee County, Judge Louise M. Tesmer. The motion sought to dismiss Alberte's action against Sprenger as an individual on the grounds that Title VII and the ADA do not subject her to personal liability. The circuit court granted the motion and dismissed Sprenger from the action.

¶ 5. Alberte appealed from the circuit court's order granting summary judgment and dismissing Sprenger from the action. The court of appeals certified the issue to this court pursuant to Wis. Stat. § 809.61, but this court declined to grant certification. Hearing the merits of the appeal, the court of appeals determined that the literal language of these statutes subject Sprenger to personal liability and therefore reversed the order of the circuit court. *Alberte*, 223 Wis. 2d at 5–6. ANEW and Sprenger petitioned this court for review.

## II. Standard of Review

¶ 6. The question whether an employer's agent may be held personally liable for violations of Title VII and the ADA arises in this case in the context of a summary judgment motion. An appellate court independently reviews a circuit court's order granting

summary judgment, applying the same standards as the circuit court. *Doe v. Archdiocese of Milwaukee*, 211 Wis. 2d 312, 332, 565 N.W.2d 94 (1997).

¶ 7. Whether the summary judgment motion was properly granted in this case depends upon whether the ADA imposes liability on individuals, which is an issue of first impression in Wisconsin state courts. Although we may of course seek guidance in the persuasive authority of other jurisdictions, only United States Supreme Court interpretations of federal law are binding on this court. *State v. Webster*, 114 Wis. 2d 418, 426 n.4, 338 N.W.2d 474 (1983). Thus, we are not bound by the Seventh Circuit's determination that the ADA does not impose individual liability on employers' agents. *See United States E.E.O.C. v. AIC Security Investigations, Ltd.*, 55 F.3d 1276, 1282 (7th Cir. 1995). Instead, this case presents a question of statutory interpretation. Interpretation of a federal statute is a question of law that is subject to *de novo* review by this court. *GMAC Mortgage Corp. v. Gisvold*, 215 Wis. 2d 459, 471, 572 N.W.2d 466 (1998).

### III. Individual Liability under the ADA

¶ 8. The statutory provisions that we must interpret are the provisions that create liability under Title VII and the ADA. Title VII prohibits any "employer" from engaging in unlawful employment practices. 42 U.S.C. § 2000e–2. "Employer" is defined as "a person engaged in an industry affecting commerce who has fifteen or more employees. . .*and any agent of such person.*" 42 U.S.C. § 2000e(b)(emphasis added). The ADA prohibits discrimination by any "covered entity" against a qualified individual with a disability. 42 U.S.C. § 12112(a). A "covered entity" includes "an

591

employer, employment agency, labor organization, or joint labor-management committee." 42 U.S.C. § 12111(2). An "employer" is defined as "a person engaged in an industry affecting commerce who has 15 or more employees. . .*and any agent of such person.*" 42 U.S.C. 42 U.S.C. § 12111(5)(A) (emphasis added). The ADA also provides that the remedies, procedures, and rights set forth in Title VII also apply to any person alleging violation of the ADA. 42 U.S.C. § 12133.

¶ 9. Alberte claims that inclusion of the phrase, "any agent of such person" in the definition of "employer" under both of these statutes clearly and unambiguously means that agents may be held liable for violating Title VII and the ADA. She urges us to apply the well-established rule that "[i]n a statutory construction case, the beginning point must be the language of the statute, and when a statute speaks with clarity to an issue judicial inquiry into the statute's meaning, in all but the most extraordinary circumstance, is finished." *Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 475 (1992). *See also INS v. Phinpathya*, 464 U.S. 183, 189 (1984); *Griffin v. Oceanic Contractors, Inc*, 458 U.S. 564, 571 (1982); *DNR v. Wisconsin Power & Light Co.*, 108 Wis. 2d 403, 408, 321 N.W.2d 286 (1982). Under this rule, Alberte argues that we must give effect to her "plain meaning" interpretation of the phrase "and any agent."

¶ 10. While it is true that statutory interpretation begins with the language of the statute, it is also well established that courts must not look at a single, isolated sentence or portion of a sentence, but at the role of the relevant language in the entire statute. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 51 (1987). *See also In re: Antonio M.C.*, 182 Wis. 2d 301, 309, 513 N.W.2d 662 (Ct. App. 1994). Moreover, courts have " 'some

"scope for adopting a restricted rather than a literal or usual meaning of its words where acceptance of that meaning. . .would thwart the obvious purpose of the statute." ' " *Griffin*, 458 U.S. at 571 (quoting *Commissioner v. Brown*, 380 U.S. 563, 571 (1965) and *Helvering v. Hammel*, 311 U.S. 504, 510–11 (1941)). When a literal interpretation produces absurd or unreasonable results, or results that are clearly at odds with the legislature's intent, "[o]ur task is to give some alternative meaning" to the words. *Green v. Bock Laundry Machine Co.*, 490 U.S. 504, 527 (1989)(Scalia, J., concurring).[2]

¶ 11. Although there are no relevant Wisconsin cases to guide our interpretation in this case, there is a wealth of relevant federal circuit court precedent. Because both the ADA and the Age Discrimination in Employment Act (ADEA) define "employer" almost identically to the way it is defined in Title VII, "[c]ourts

---

[2] *See also United States v. Granderson*, 511 U.S. 39, 41–56 (1994)(rejecting an "implausible" interpretation in favor of a more sensible one after an examination of the legislative history); *United States v. Turkette*, 452 U.S. 576, 580 (1981) ("[A]bsurd results are to be avoided and internal inconsistencies in the statute must be dealt with. . . ."); *Rathbun v. United States*, 355 U.S. 107, 109 (1957) ("Every statute must be interpreted in the light of reason and common understanding to reach the results intended by the legislature."); *United States v. Katz*, 271 U.S. 354, 357 (1926)("All laws are to be given a sensible construction; and a literal application of a statute, which would lead to absurd consequences, should be avoided. . . ."); *United States v. Kirby*, 74 U.S. 482, 486 (1868) ("All laws should receive a sensible construction. General terms should be so limited in their application as not to lead to injustice, oppression, or an absurd consequence."); *DeMars v. LaPour*, 123 Wis. 2d 366, 372, 366 N.W.2d 891 (1985); *Connell v. Luck*, 264 Wis. 282, 284–85, 58 N.W.2d 633 (1953).

routinely apply arguments regarding individual liability to all three statutes interchangeably." *AIC*, 55 F.3d at 1280. The vast majority of federal circuit courts have determined that the phrase "and any agent" does not create individual liability under these three statutes.[3] Similarly, the Sixth Circuit has recently held that indi-

[3] *Wathen v. General Electric Co.*, 115 F.3d 400, 406 (6th Cir. 1997)(holding that Congress did not intend individuals to face liability under Title VII); *Sheridan v. E.I. DuPont de Nemours and Co.*, 100 F.3d 1061, 1078 (3d Cir. 1996)(holding that individual employees may not be held liable under Title VII); *Haynes v. Williams*, 88 F.3d 898, 901 (10th Cir. 1996)(holding that suits against individual supervisors in their personal capacities are not permitted under Title VII); *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir. 1995)(holding that an employer's agent may not be held individually liable under Title VII); *Gary v. Long*, 59 F.3d 1391, 1399 (D.C. Cir. 1995)(holding that although supervisory employees may be named as parties in Title VII claims, they may not be held personally liable for violations of Title VII); *AIC*, 55 F.3d at 1282 (holding that individuals who do not otherwise meet the statutory definition of "employer" cannot be held liable under the ADA); *Cross v. State*, 49 F.3d 1490, 1504 (11th Cir. 1995)(holding that individuals may not be held personally liable under Title VII); *Grant v. Lone Star Co.*, 21 F.3d 649, 653 (5th Cir. 1994)(holding that individuals who do not otherwise meet the statutory definition of "employer" under Title VII may not be held personally liable under Title VII); *Miller v. Maxwell's Int'l, Inc.*, 991 F.2d 583, 588 (9th Cir. 1993)(holding that individual supervisors may not be held personally liable under the ADEA).

*See also Lenhardt v. Basic Inst. of Technology, Inc.*, 55 F.3d 377, 381 (8th Cir. 1995)(interpreting an analogous provision of the Missouri Human Rights Act (MHRA) consistently with Title VII and holding that therefore an employee may not be held personally liable under the MHRA); *Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 510–11 and n.1 (4th Cir. 1994)(holding that with respect to "personnel decisions of a plainly delegable

vidual supervisors may not be held liable in a retaliation claim under the Rehabilitation Act because they do not meet the statutory definition of "employer." *Hiler v. Brown*, 177 F.3d 542, 547 (6th Cir. 1999). Like these courts, we conclude that Alberte's narrow, literal interpretation of the phrase "and any agent" is not consistent with the entire remedial scheme of Title VII and the ADA, and produces unreasonable results. Accordingly, we reverse the decision of the court of appeals and hold that Sprenger is not subject to liability in her individual capacity under these statutes.

A. Unreasonable results of a literal interpretation

¶ 12. Like the overwhelming majority of federal circuit courts, we are persuaded that Alberte's literal interpretation of the phrase "and any agent" does not make sense in light of the entire scheme of Title VII and the ADA.

¶ 13. To begin with, Title VII and the ADA both limit employer liability to employers who have more than 15 employees. 42 U.S.C. § 2000e(b); 42 U.S.C. § 12111(5)(A).[4] Thus, under Alberte's interpretation, although an entity that employs fewer than fifteen employees would be protected from liability, an individual supervisor would be subject to liability. It seems

---

character," an employee may not be held personally liable under the ADEA).

*But see Paroline v. Unisys Corp.*, 879 F.2d 100, 104 (4th Cir. 1989), *vacated on other grounds by Paroline v. Unisys Corp.*, 900 F.2d 27 (4th Cir. 1990) (holding that an employer's agent may be subject to individual liability under Title VII if evidence establishes that the company's management acquiesced in the agent's exercise of supervisory authority).

[4] Under the ADEA, liability is limited to employers who have more than 20 employees. 29 U.S.C. § 630(b).

doubtful that Congress would subject individuals to liability while at the same time protecting small employers from liability. *Tomka,* 66 F.3d at 1314 (quoting *Miller,* 991 F.2d at 587); *Birkbeck,* 30 F.3d at 510; *Miller,* 991 F.2d at 587. Such a result would upset the statutory framework, which strikes a careful balance between Congress's desire to eradicate all discrimination and its desire to protect small entities from the burden of litigation. *AIC,* 55 F.3d at 1281.

¶ 14. Furthermore, the remedies available to plaintiffs under these statutes also support the conclusion that Congress did not intend to impose liability on individuals. Until the Civil Rights Act of 1991, 42 U.S.C. § 1981a, was enacted, a plaintiff suing under Title VII or the ADA could only seek back pay, reinstatement, and other forms of equitable relief; these remedies are generally recoverable from an entity rather than an individual. *Tomka,* 66 F.3d at 1314; 42 U.S.C. § 2000e–5(g)(1)(1990). The fact that Congress originally only provided for remedies that are typically recovered from an employing entity rather than an individual suggests that Congress did not intend to impose liability on individuals. *Hiler,* 177 F.3d at 546 (citing *Wathen,* 115 F.3d at 406); *Tomka,* 66 F.3d at 1314–15; *AIC,* 55 F.3d at 1281.

¶ 15. Alberte points out that the Civil Rights Act of 1991 amended the law to allow for compensatory and punitive damages and argues that individual liability is consistent with the amended remedial framework. We determine that, to the contrary, the 1991 amendments provide further support for the conclusion that Congress did not contemplate individual liability under the ADA. Although compensatory and punitive remedies are remedies that generally may be recovered from individuals, "[i]t is a long stretch to conclude that

Congress silently intended to abruptly change its earlier vision through an amendment to the remedial portions of the statute alone." *AIC*, 55 F.3d at 1281. It seems more likely that if Congress intended to so drastically amend the remedies available under Title VII and the ADA, it would have explicitly provided for individual liability.

¶ 16. Moreover, the Civil Rights Act of 1991 enacted a detailed scheme of statutory limits on compensatory and punitive damage awards, depending on the number of employees employed by an employer. 42 U.S.C. § 1981a(b)(3). For example, a damage award against an employer who employs between 15 and 100 employees may not exceed $50,000. 42 U.S.C. § 1981a(b)(3)(A). An employer who employs between 101 and 200 employees may be liable for up to $100,000 in damages, 42 U.S.C. § 1981a(b)(3)(B), while an employer who employs between 201 and 500 employees may be liable for up to $200,000 in damages. 42 U.S.C. § 1981a(b)(3)(C). Finally, damages against an employer who employs over 500 employees are limited to $300,000. 42 U.S.C. § 1981a(b)(3)(D).

¶ 17. Nothing in this detailed scheme of limitations on damage awards refers to awards against individuals. If Congress had intended to subject individuals to liability, surely it would have accounted for individuals in this detailed scheme of damages caps. *Hiler*, 177 F.3d at 546 (quoting *Wathen*, 115 F.3d at 406). Congress's silence on the question of damage awards against individuals is strong evidence that Congress simply did not contemplate individual liability. *Wathen*, 115 F.3d at 406; *Sheridan*, 100 F.3d at 1077; *Tomka*, 66 F.3d at 1315; *AIC*, 55 F.3d at 1281; *Miller*, 991 F.2d at 587 n.2.

¶ 18. Alberte rejects this reasoning and argues that, instead, after the enactment of the Civil Rights Act of 1991, the damage award that may be recovered from an individual for violation of Title VII or the ADA depends upon the size of the employer that employs the individual. For instance, Alberte contends that a supervisor who works for a business that employs 20 people could be held liable for up to $50,000, while a supervisor who works for a business that employs 1,000 people could be held liable for up to $300,000.

¶ 19. Alberte's interpretation would mean that an individual who works for a large employer could be liable for $300,000 in damages, while a business entity that employs fewer than 99 workers could only be subjected to $50,000 in damages. We agree with the Seventh Circuit that it is "highly improbable" that Congress intended such inequitable results. *AIC*, 55 F.3d at 1281 n.6. *See also Tomka*, 66 F.3d at 1316 ("It is doubtful that such an anomalous result was contemplated by a Congress that failed even to address individual liability."). It therefore appears that Alberte's interpretation of the phrase "and any agent" does not fit the overall remedial scheme of the statute and would produce unreasonable results.

¶ 20. In sum, we conclude that Alberte's interpretation of these statutes to permit individual liability rests on an improperly narrow reading of the phrase "and any agent." When the phrase is read together with the rest of the statute, Alberte's interpretation produces inconsistent, unreasonable results. When a literal construction of a statutory provision produces unreasonable results, the court will look to the statute's context, history, and purposes to determine the legislative intent. *Katz*, 271 U.S. at 357. *See also Bock Laundry*, 490 U.S. at 527 (Scalia, J., concurring)("I

think it entirely appropriate to consult all public materials. . .to verify that what seems to us an unthinkable disposition . . .was indeed unthought of . . . ."); *Phinpathya*, 464 U.S. at 198 ("[When] a literal interpretation of a statutory provision may indeed lead to absurd consequences we must look beyond the terms of the provision to the underlying congressional intent.")(Brennan, J., concurring)(citation omitted); *Connell*, 264 Wis. at 284–85.

## B. Legislative History

¶ 21. We conclude that an examination of the legislative history of the provisions at issue in this case suggests that Congress did not intend to impose liability on individuals under the ADA.

¶ 22. As previously noted, the ADA adopted the phrase "and any agent" from the nearly identical provision in Title VII. *AIC*, 55 F.3d at 1280 n.1. *See also* Gregory M. P. Davis, Comment, *More Than a Supervisor Bargains for: Individual Liability Under the Americans with Disabilities Act and Other Employment Discrimination Statutes*, 1997 Wis. L. Rev. 321, 327. The legislative history of Title VII shows that by limiting Title VII's applicability to larger employers, Congress intended to protect small business entities from the burden of complying with Title VII and litigating discrimination claims. *See Tomka*, 66 F.3d at 1314 (citing 110 Cong. Rec. S. 13088, 92–93 (1964) (Remarks of Senators Cotton, Humphrey, and Morse)). It therefore seems unlikely that Congress intended to make individuals liable. *Id.*; *AIC*, 55 F.3d at 1281.

¶ 23. Alberte points out that there is also evidence that other factors influenced Congress's decision to enact the size limitations in Title VII. In particular, it appears that Congress was concerned with ensuring

that Title VII was consistent with the Commerce Clause of the United States Constitution. *See Tomka,* 66 F.3d at 1322 (J. Parker, dissenting). Alberte argues that the legislative history therefore does not clearly support the conclusion that Congress intended to protect small entities from Title VII liability.

¶ 24. It is true that a complex set of factors influenced Congress's decision to enact the size limitations in Title VII. However, this does not change the fact that nothing in Title VII's legislative history suggests that Congress contemplated the imposition of individual liability. Instead, Title VII's legislative history is completely silent with respect to the issue of individual agent liability. *Tomka,* 66 F.3d at 1314. *See also* Clara J. Montanari, Comment, *Supervisor Liability Under Title VII: A "Feel Good" Judicial Decision,* 34 Duq. L. Rev. 351, 360–65 (1996). Because the debate over Title VII was so contentious, "[i]t is difficult to accept that if supervisor liability had been intended, it would not have been discussed once. Rather, it is likely that it not only would have been discussed, but would have been a wellspring of vehement opposition." Montanari at 361; *see also Tomka,* 66 F.3d at 1314. Congress's failure to comment on individual liability throughout the long, hostile debate over the passage of Title VII indicates that Congress simply did not contemplate the imposition of individual liability. *Tomka,* 66 F.3d at 1314. We conclude that the legislative history's silence with regard to the issue of individual liability, together with its express discussion of the need to protect small entities from Title VII liability, strongly suggest that Congress did not intend to authorize individual liability in Title VII claims.

¶ 25. The history of the Civil Rights Act of 1991 also indicates that Congress did not intend to impose

individual liability under Title VII or the ADA. As previously discussed, the 1991 Act created a sliding scale of compensatory and punitive damage awards but did not provide for any damage awards for individuals. 42 U.S.C. § 1981a(b)(3); *Tomka*, 66 F.3d at 1315. There was no Senate Report about the 1991 Act; the House Report did not address the issue of individual liability, but instead focused on the goals of providing money damages, increasing Title VII's effectiveness, and responding to Supreme Court decisions that had limited the application of Title VII. *See* Montanari at 365–66. Nothing in the history of the 1991 Act suggests that Congress contemplated individual agent liability under these statutes.

¶ 26. Finally, the legislative history of the ADA confirms the conclusion that Congress did not contemplate individual agent liability under the ADA. While the ADA was before the Senate, the Senate Committee on Labor and Human Resources prepared a summary report about the anticipated regulatory impact of the ADA. Davis at 325–36 (citing S. Rep. No. 116, 101st Cong., 1st Sess. 88 (1989)). Although a Senate rule requires such reports to evaluate a bill's expected impact on individuals as well as businesses, the report did not mention any anticipated impact on individuals. *Id.* at 326. It seems unlikely that the committee would have failed to report on the ADA's anticipated impact on individuals if Congress had intended to impose personal liability on individual agents. *See id.*

¶ 27. In sum, legislative history strongly suggests that Congress did not contemplate the imposition of liability on individuals for violations of Title VII or the ADA.

## C. Respondeat Superior Principles

¶ 28. Alberte urges us to hold that the phrase "and any agent" plainly indicates that Congress intended to define "employer" to include individual agents.

¶ 29. We are not convinced that the phrase "and any agent" in the definition of employer plainly means that Congress intended to impose liability on individual agents. Instead, we agree with the many federal circuit courts that have concluded that Congress used the phrase "and any agent" to ensure that employer liability would be limited by the principles of respondeat superior. *See Wathen,* 115 F.3d at 405–06; *Tomka,* 66 F.3d at 1316; *Gary,* 59 F.3d at 1399; *AIC,* 55 F.3d at 1281; *Grant,* 21 F.3d at 652; *Miller,* 991 F.2d at 587.

¶ 30. This conclusion finds strong support in the United States Supreme Court's statement that "Congress' decision to define 'employer' to include any 'agent' of an employer, 42 U.S.C. § 2000e(b), surely evinces an intent to place some limits on the acts of employees for which employers under Title VII are to be held responsible." *Meritor Savings Bank v. Vinson,* 477 U.S. 57, 72 (1986). *Meritor* held that in accordance with principles of agency law, Title VII does not automatically subject employers to liability for sexual harassment by their supervisors. *Id.* at 72. Subsequent Supreme Court decisions have confirmed the notion that by defining "employer" to include any "agent," Congress intended to make clear that employers' vicarious liability is subject to the limits of respondeat superior. *See Burlington Industries, Inc. v. Ellerth,* 524 U.S. 742, 763–64, 118 S.Ct. 2257 (1998)("[W]e are bound by our holding in *Meritor* that agency principles constrain the imposition of vicarious liability in cases of supervisory harassment."); *Faragher v. City of Boca*

*Raton*, 524 U.S. 775, 791–92, 118 S.Ct. 2275 (1998)(affirming *Meritor*'s conclusion that Congress's use of the word "agent" means that employers are not automatically liable for sexual harassment by supervisors).

¶ 31. Citing *Ball v. Renner*, 54 F.3d 664, 666 (10th Cir. 1995), Alberte contends that this reasoning renders the phrase "and any agent" superfluous, because liability against an employing agency would necessarily be governed by principles of respondeat superior, whether or not this phrase was included in the definition of employer. Alberte also argues that if traditional principles of agency law govern Title VII and the ADA, then agents should be held jointly and severally liable for their discriminatory acts.

¶ 32. We are unconvinced by these arguments. To begin with, *Ball v. Renner* itself is in uneasy tension with *Sauers v. Salt Lake County*, 1 F.3d 1122, 1125 (10th Cir. 1993), and *Haynes v. Williams*, 88 F.3d at 901 (10th Cir. 1996), both of which held that Title VII does not permit actions against individual supervisors in their personal capacities.

¶ 33. Furthermore, "what *Meritor* and its progeny conclusively establish is that the agent clause is not mere surplusage, because Congress explicitly chose to apply agency principles to a determination of the scope of an employer's liability." *Tomka*, 66 F.3d at 1316. In other words, the fact that the analysis in *Meritor, Burlington*, and *Faragher* was guided by the "and any agent" phrase shows that the phrase is not surplusage. Instead, it serves the purpose of guiding courts in deciding whether an employer may be held liable for the acts of its employees.[5]

---

[5] One commentator has noted that Congress's inclusion of the phrase "and any agent" in Title VII's definition of

■

¶ 34. Moreover, the idea that Congress added the phrase "and any agent" to Title VII in order to clarify that respondeat superior principles should apply to the definition of "employer" is also consistent with *Meritor*'s statement that common law agency principles "may not be transferable in all their particulars to Title

"employer" might be explained by the close relationship between Title VII and the NLRA. *See* Jan W. Henkel, *Discrimination by Supervisors: Personal Liability Under Federal Employment Discrimination Statutes*, 49 Fla. L. Rev. 765, 774. Title VII's remedial provisions were modeled on the provisions of the NLRA. *Id.*; *Meritor*, 477 U.S. at 75 n.1. In 1947, Congress added the phrase "any person acting as an agent of an employer" to the National Labor Relations Act (NLRA) in response to court decisions holding employers liable for acts of employees outside the scope of their duties under an earlier version of the NLRA. Henkel at 774 (citing H.R. Conf. Rep. No. 510, 80th Cong., 1st Sess. (1947)). This amendment was intended to clarify that employers should only be held liable for the actions of employees within the scope of their authority. *Id.* Thus,

> [b]ecause Title VII was enacted against the well established back-drop of the NLRA and adopted not only its agent language but also its remedial provisions, many courts find the absence of any reference to individual liability in Title VII's legislative history unremarkable; having incorporated the NLRA's liability scheme into Title VII, Congress simply did not anticipate that individual liability for agents would ever be an issue under Title VII.

*Id.* at 774–75 and n.52 (citing *Friend v. Union Dime Savings Bank*, No. 79 Civ. 5450, 1980 WL 227 (S.D.N.Y 1980)(unpublished decision)). *See also, Low v. Hasbro, Inc.*, 817 F. Supp 249, 250 (D.R.I. 1993)(determining that the history of Congress's amendment to the NLRA makes clear that Congress intended " 'to limit the employer's liability rather than to grant a new cause of action against all agents or employees of an employer.' ")(quoting *Friend*, 1980 WL 227).

VII." *Meritor*, 477 U.S. at 72. Alberte's argument that the phrase "and any agent" incorporates all common law agency principles into Title VII and the ADA conflicts with this explicit statement in *Meritor*. Instead, we are persuaded that Congress added the phrase "and any agent" merely to clarify that employer liability should be limited by respondeat superior principles.

## IV. Conclusion

¶ 35. In sum, we conclude that the better reasoned interpretation of the phrase "and any agent" in 42 U.S.C. § 2000e(b) and 42 U.S.C. § 12111(5)(A) is that it expresses Congress's intent to incorporate respondeat superior principles into the definition of "employer." The alternative interpretation urged by the plaintiff produces unreasonable results, contravenes legislative intent, and finds no support in the history of the statute. We therefore reverse the decision of the court of appeals and join the Seventh Circuit and the majority of federal circuit courts in concluding that an individual is not personally liable under Title VII or the ADA.

*By the Court.*—The decision of the court of appeals is reversed.