In the INTEREST OF LINDSEY A. F., a person Under the Age of 17:

STATE of Wisconsin, Petitioner-Appellant,†

v.

LINDSEY A. F., Respondent-Respondent.

Court of Appeals

*Nos. 01–0081, 01–0082. Oral argument January 24, 2002.— Decided August 15, 2002.*

2002 WI App 223

(Also reported in 653 N.W.2d 116.)

† Petition to review granted 11-12-02.

652

On behalf of the petitioner-appellant, the cause was submitted on the briefs of and oral argument by *Michael S. Walsh*, deputy district attorney for Dane County.

On behalf of the respondent-respondent, the cause was submitted on the brief of and oral argument by *Eileen A. Hirsch*, assistant state public defender, Madison.

Before Dykman, Roggensack and Lundsten, JJ.

¶ 1. LUNDSTEN, J. The State appeals two orders of the circuit court, both dismissing identical delinquency petitions against Lindsey A.F., a minor, and both

referring the matter for a deferred prosecution agreement. The circuit court dismissed against the wishes of the State, relying on the authority conferred by WIS. STAT. § 938.21(7) (1999–2000).[1] The State contends the circuit court's authority to dismiss under § 938.21(7) is dependent on the consent of a district attorney. For the following reasons, we affirm the circuit court.

## BACKGROUND

¶ 2. Thirteen-year-old Lindsey A.F. sold marijuana while in a middle school. Lindsey's case was referred to an intake worker, who referred the case to the district attorney with a recommendation that the district attorney file a delinquency petition and enter into a consent decree. The district attorney filed a delinquency petition, but apparently determined a consent decree was inappropriate. Lindsey then moved, under WIS. STAT. § 938.21(7), to dismiss the petition and refer her case back to the intake worker for deferred prosecution. Over the prosecutor's objection, the circuit court granted Lindsey's motion and dismissed the petition. Lindsey then entered into a deferred prosecution agreement.

¶ 3. Thereafter, the district attorney, relying on WIS. STAT. § 938.245(6), attempted to unilaterally terminate the deferred prosecution agreement by filing a second delinquency petition containing the same charge and factual allegations as the first petition.[2] Once more, Lindsey moved to dismiss the petition and refer the

[1] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

[2] The second petition at issue here contained no new allegations. At oral argument, Lindsey A.F.'s counsel suggested that district attorneys may have the authority to file a new

case for deferred prosecution pursuant to WIS. STAT. § 938.21(7). Once more the circuit court granted the motion. The circuit court reasoned that the district attorney did not have the authority under § 938.245(6) to terminate a deferred prosecution agreement ordered by a court pursuant to § 938.21(7). The State appeals both circuit court orders.[3]

## DISCUSSION

### A. *Plain Meaning of WIS. STAT. §§ 938.21(7), 938.24(5), and 938.245(6)*

¶ 4. The parties' dispute centers on the proper construction of WIS. STAT. § 938.21(7) as it relates to a circuit court's authority to dismiss a juvenile petition and refer the matter for a deferred prosecution agreement. The parties agree that we must read § 938.21(7) in light of the related statutes, WIS. STAT. §§ 938.24 and 938.245.

¶ 5. The proper construction of a statute is a question of law. *DeMars v. LaPour*, 123 Wis. 2d 366, 370, 366 N.W.2d 891 (1985). We first look to the language of the statute itself and attempt to interpret it

petition if they add new charges or factual allegations. This may be true in some situations, but the issue is not before us and we decline to address it.

[3] At oral argument, the State asserted that the construction adopted by the circuit court is not widely followed in Wisconsin and that a decision by this court upholding the circuit court would cause a statewide change in how circuit courts supervise juvenile charging by district attorneys. We will assume this to be true for purposes of our discussion but, for reasons that should be obvious, this assumption does not affect the result we reach.

based on "the plain meaning of its terms." *State v. Williquette*, 129 Wis. 2d 239, 248, 385 N.W.2d 145 (1986). "While it is true that statutory interpretation begins with the language of the statute, it is also well established that courts must not look at a single, isolated sentence or portion of a sentence, but at the role of the relevant language in the entire statute." *Alberte v. Anew Health Care Servs., Inc.*, 2000 WI 7, ¶ 10, 232 Wis. 2d 587, 605 N.W.2d 515. Further, "[e]ven when a statute appears unambiguous on its face, it can be rendered ambiguous by its interaction with and its relation to other statutes." *State v. White*, 97 Wis. 2d 193, 198, 295 N.W.2d 346 (1980). A statute is ambiguous if reasonable persons could disagree as to its meaning. *Williquette*, 129 Wis. 2d at 248. Only when statutory language is ambiguous may we examine other construction aids such as legislative history, context, and subject matter. *State v. Waalen*, 130 Wis. 2d 18, 24, 386 N.W.2d 47 (1986).

¶ 6. In this case, the district attorney attempted to override the first dismissed order by filing a new petition. The district attorney also appealed both dismissal orders. Despite the fact that the district attorney attempted to override the first dismissal, the State's argument is not that district attorneys may override court-ordered § 938.21(7) dismissals. Rather, the State primarily argues that the circuit court acted illegally when it dismissed the petitions without the district attorney's consent.[4]

---

[4] WISCONSIN STAT. § 938.21(7) refers to the ability of a court to dismiss a "petition," and may apply to all petitions filed under chapter 938. However, because this case arises in the context of a delinquency petition, we do not address the applicability of § 938.21(7) to other types of petitions.

¶ 7. The State begins with the assumption that § 938.245(6) confers on district attorneys the authority to terminate any deferred prosecution agreement. Thus, even though § 938.21(7) makes no reference to district attorney consent, the State contends that, because district attorneys have the power to terminate any deferred prosecution agreement, the only logical reading of § 938.21(7) is that it requires district attorney consent to dismiss a petition and refer for deferred prosecution. Otherwise, the State reasons, the statutes would authorize a never-ending, absurd cycle of court-ordered dismissal and district attorney re-filing whenever a circuit court and district attorney disagree on the need for an immediate delinquency petition.

¶ 8. However, we conclude that the relevant statutes unambiguously permit a circuit court to order dismissal and refer the matter for deferred prosecution without the consent of the district attorney. We also conclude that a district attorney is not authorized by § 938.245(6) to terminate such a court-ordered deferred prosecution agreement. As we explain below, a district attorney's authority under § 938.245(6) to terminate a deferred prosecution is contingent on receiving notice from an intake worker under § 938.24(5). When a court orders deferred prosecution under § 938.21(7), there is no intake worker notice under § 938.24(5) to trigger district attorney termination authority under § 938.245(6).

¶ 9. The process leading to notice to a district attorney under § 938.24(5) is spelled out in § 938.24. Under § 938.24(1), a juvenile's case is referred to an intake worker for an "inquiry" when there is information indicating the juvenile is "delinquent, in need of

protection or services or in violation of a civil law or a county, town or municipal ordinance." After an intake worker receives a referral under sub. (1), he or she has forty days to conduct the inquiry and request that a petition be filed, enter into a deferred prosecution agreement, or close the case. WIS. STAT. § 938.24(5).[5] After choosing one of these options, the intake worker must notify the district attorney. WIS. STAT. § 938.24(3) and (5).

¶ 10. Section 938.245(6) empowers the district attorney to terminate a deferred prosecution agreement by filing a delinquency petition. However, § 938.245(6) does not contain a blanket grant of authority to terminate. Rather, this authority is tied to having received notice from the intake worker pursuant to § 938.24(5). Section 938.245(6) provides, in pertinent part:

> A deferred prosecution agreement arising out of an alleged delinquent act is terminated if the district attorney files a delinquency petition within 20 days after receipt of notice of the deferred prosecution agreement under s. 938.24(5).

---

[5] WISCONSIN STAT. § 938.24(5) reads, in relevant part:

(5) The intake worker shall request that a petition be filed, enter into a deferred prosecution agreement or close the case within 40 days or sooner of receipt of referral information . . . . If the case is closed or a deferred prosecution agreement is entered into, the district attorney, corporation counsel or other official under s. 938.09 shall receive written notice of such action . . . . Notwithstanding the requirements of this section, the district attorney may initiate a delinquency petition under s. 938.25 within 20 days after notice that the case has been closed or that a deferred prosecution agreement has been entered into.

¶ 11. Once a petition has been filed, a juvenile may move under § 938.21(7) for a court-ordered consent decree or for dismissal and deferred prosecution. Section 938.21(7) provides:

> If the judge or juvenile court commissioner determines that the best interests of the juvenile and the public are served, he or she may enter a consent decree under s. 938.32 or order the petition dismissed and refer the matter to the intake worker for deferred prosecution in accordance with s. 938.245.

¶ 12. Section 938.21(7) references § 938.245, the statute that administers deferred prosecution agreements. By directly referencing § 938.245 without mentioning § 938.24, § 938.21(7) skips over the notice requirement in § 938.24(5).

¶ 13. As explained above, when a district attorney receives notice of a deferred prosecution agreement from an intake worker pursuant to § 938.24(5), the twenty-day window during which the district attorney may terminate the deferred prosecution agreement under § 938.245(6) begins. In contrast, when a deferred prosecution agreement is ordered pursuant to § 938.21(7), there is no requirement that the intake worker notify the district attorney and, thus, nothing occurs that triggers a district attorney's authority to terminate the agreement under § 938.245(6).[6] Therefore, we agree with the circuit court and Lindsey A.F. that a circuit court order under § 938.21(7) dismissing a

---

[6] The appellate record contains a form which is used to record deferred prosecution agreements. The form states: "The district attorney may file a delinquency petition within 20 days of receipt of this agreement. Filing a petition will cancel this agreement." This form may need to be altered to reflect our holding that district attorneys may not file new

659

petition and referring for deferred prosecution does not require district attorney consent. For the same reasons, a district attorney may not override a dismiss-and-refer order by filing a new petition with the same charges and facts.

¶ 14. In the following sections, we address additional arguments made by the State contesting our plain language reading and also address the State's claim that our construction unconstitutionally violates the separation of powers doctrine.

### B. The State's Arguments Against Our "Plain Meaning" Reading of the Statutes

¶ 15. The State first contends that Wis. Stat. § 938.24(5) clearly requires notice to district attorneys, even when a deferred prosecution agreement is ordered under Wis. Stat. § 938.21(7). The State points out that § 938.24(5) says intake workers "shall" notify district attorneys of each deferred prosecution agreement, and that this subsection contains no exceptions. The State argues that if the legislature had intended to exempt deferred prosecution agreements ordered under § 938.21(7) from the notice requirement, it would have done so.

¶ 16. However, the context of "shall" in § 938.24(5) is a decision within forty days of the *initial* referral to the intake worker. Indeed, when discussing this point, the State argues:

> In addition, the [circuit] court's reliance on the word "notice" as the "empowering" word of secs.

---

petitions with the same charges and allegations in response to court-ordered deferred prosecution agreements under Wis. Stat. § 938.21(7).

938.245(6) and 938.24(5) is simply misplaced. These two subsections clearly authorize the district attorney to override a determination by the intake worker that a case should be closed or should be resolved with a deferred prosecution agreement. The word "notice" is important because receipt of the "notice" begins the 20 days within which the district attorney must file a delinquency petition *to override the intake worker's decision.* The word simply has no other significance.

(Emphasis added.) This argument highlights our point. Section 938.24(5) authorizes district attorneys to override determinations *by an intake worker.* Here, the determination was made by the circuit court.[7]

¶ 17. The State next contends that § 938.21(7) is ambiguous and asserts that it has provided a viable alternative reading of the statute. Of course, if reasonable people could disagree as to its meaning, § 938.21(7) would be ambiguous, and we would turn to extrinsic construction aids. However, the State's alternative reading is not reasonable because it renders the disputed portion of § 938.21(7) surplusage.

¶ 18. The State asserts that § 938.21(7) must be read to require district attorney consent to dismissal of

_____

[7] Both in her brief and at oral argument, Lindsey A.F. argued that dismissal under § 938.21(7) gives the district attorneys notice and substitutes for the notice they would get under § 938.24(5). Lindsey A.F. argues that because a district attorney gets notice of the dismissal and referral for a deferred prosecution agreement, no additional notice is needed. We disagree. While it is true that a district attorney necessarily gets notice of a dismissal and referral under § 938.21(7), such notice is entirely different than notice under § 938.24(5). Notice under § 938.24(5) empowers the district attorney with statutory authority to override the decision made. Notice that occurs as a result of dismissal and referral under § 938.21(7) by a circuit court has no such effect.

a petition and referral for deferred prosecution. Without this interpretation of § 938.21(7), the State contends, a court has no authority to dismiss and refer for deferred prosecution, even when all parties agree. However, we agree with Lindsey A.F.'s assertion that § 938.21(7) is unnecessary to achieve this result.

¶ 19. Section 938.24(4) states: "If a petition has been filed, a deferred prosecution agreement may not be entered into or a case may not be closed unless the petition is withdrawn by the district attorney . . . ." Thus, § 938.24(4) authorizes the district attorney to withdraw a petition. The language "a deferred prosecution agreement may not be entered into or a case may not be closed unless" makes plain that the withdrawal of a petition under § 938.24(4) clears the way for a deferred prosecution agreement.[8]

¶ 20. It follows that the State's reading of § 938.21(7) renders the dismiss-and-refer portion of the statute surplusage. Section 938.24(4) provides authority to accomplish withdrawal of a petition and a deferred prosecution agreement when the parties agree. "[I]t is a basic rule of statutory construction that effect is to be given to every word of a statute if possible, so that no portion of the statute is rendered superfluous." *Lake City Corp. v. City of Mequon*, 207 Wis. 2d 155, 162, 558 N.W.2d 100 (1997).

---

[8] The parties have not briefed and we do not address whether court approval is required for a district attorney to withdraw a petition under § 938.24(4). We also note that at oral argument the State and counsel for Lindsey A.F. agreed that, regardless of the statutes, a circuit court has authority to dismiss charges in a petition when asked to do so by the district attorney. The dispute here, however, concerns the authority to both dismiss a petition *and* refer the matter for deferred prosecution upon a motion *by the juvenile.*

¶ 21. The State also argues that our construction is contrary to the legislative directive that district attorneys represent the public. WISCONSIN STAT. § 938.09(1) states that district attorneys "shall" represent the public interest in delinquency proceedings. The State contends that § 938.21(7) transfers some charging authority from the district attorney to the court, contrary to the legislature's express intent that the district attorney represent the public. However, the question here is not whether district attorneys, as a general proposition, are directed by the legislature to represent the public interest in juvenile proceedings, but whether the legislature intended to limit the charging discretion of district attorneys. Here, a specific statutory provision, § 938.21(7), governs the question presented, rather than the general provision relied on by the State. *Kapischke v. County of Walworth*, 226 Wis. 2d 320, 327, 595 N.W.2d 42 (Ct. App. 1999) (when construing statutes, specific statutes take precedence over general statutes).

### C. The State Has Not Demonstrated that Our Construction Leads to Absurd Results

■

¶ 22. The State asserts that the construction of the statutes we have adopted above causes serious problems the legislature could not have intended. When faced with plain language, as we are here, we apply the plain language unless such application would lead to absurd or unreasonable results. *Gasper v. Parbs*, 2001 WI App 259, ¶ 8, 249 Wis. 2d 106, 637 N.W.2d 399. Thus, we will consider these arguments, but only in the context of determining whether they lead to absurd results.

### 1. Dismissal Prior to Full Inquiry

¶ 23. The State argues that the interpretation adopted above would permit courts to dismiss petitions before receiving complete intake information. This fear is real, the State contends, because WIS. STAT. § 938.21(7) is applicable to petitions filed within twenty-four hours, as required when a juvenile is in custody pursuant to § 938.21(1)(a). In these cases, an intake worker has less than twenty-four hours to investigate. In the State's view, a court could dismiss and refer under § 938.21(7) based on incomplete and possibly inaccurate information when an adequate inquiry would show that dismissal and deferred prosecution is inappropriate.

¶ 24. We agree that under our reading of § 938.21(7) dismissals based on inadequate information are possible, but conclude this possibility does not render our reading of the statute absurd. Courts often make discretionary determinations based upon incomplete information. We trust that circuit courts will typically reject dismissal motions when information is insufficient. Moreover, if a court does dismiss based on insufficient information, the district attorney is not without remedy; he or she may appeal the dismissal. Requiring district attorneys to appeal in this situation may be cumbersome, but it is by no means an absurd result.

### 2. Dismissal Hearings Would Cause Delays

¶ 25. The State argues that under this court's construction of § 938.21(7), floodgates will open and defense attorneys will routinely move to dismiss petitions. This, the State contends, will lead to numerous and sometimes lengthy hearings, causing undesirable

delays in the juvenile justice system. The State provides three reasons supporting its belief that such motions will mushroom in number: (1) the broad standard under which these motions are reviewed, "best interests of the juvenile and the public," will encourage motions and lead to lengthy hearings; (2) multiple motions could be brought in the same case; and (3) defense attorneys, to avoid being labeled ineffective, will feel compelled to move for dismissal whenever there is a "plausible basis" for such a motion.

¶ 26. The State's prediction of widespread delay is plausible, but speculative nonetheless. It is entirely possible that defense attorneys will be judicious when moving to dismiss under § 938.21(7) so as not to irritate circuit courts or dilute § 938.21(7)'s potency by overuse. For that matter, successful motions to dismiss will often speed resolution of cases.

¶ 27. Regarding ineffective assistance of counsel, we doubt defense attorneys will feel compelled to bring constant motions to avoid ineffective assistance accusations. The burden of showing both the absence of a strategic reason for the omission and resulting prejudice will deter such claims. *See State v. Johnson*, 153 Wis. 2d 121, 127–28, 449 N.W.2d 845 (1990). The failure to bring a motion to dismiss under § 938.21(7) every time there is a "plausible basis" will seldom constitute ineffective assistance.

¶ 28. Moreover, even if we could confidently predict that our construction of § 938.21(7) would lead to significant delays in the processing of juvenile cases, such a result is not "absurd" as that term is used in statutory construction analysis. A number of legislative enactments add to delay in processing categories of cases. Our job is to interpret statutes, not to judge the

wisdom of the legislature. *See State v. Cardenas-Hernandez*, 219 Wis. 2d 516, 542 n.8, 579 N.W.2d 678 (1998) ("Our task . . . is not to weigh public policy but to interpret [the statute] . . . . In enacting [the statute], the legislature apparently concluded that public policy was best served by [its approach].").

*3. No Statutory Framework for Follow-Up Oversight*

¶ 29. The State argues that our construction leaves unresolved issues because, once a case has been referred back to the intake worker under § 938.21(7), there is no framework for oversight. The State notes, for example, that nothing compels a juvenile or parent to agree to a deferred prosecution agreement proposed by an intake worker after such a dismissal and there is no mechanism for returning to the circuit court. This, the State contends, will lead to situations in which a court orders a deferred prosecution agreement, but no agreement results and, from the vantage point of the district attorney and the court, the case simply disappears. The State's concern seems legitimate, but it does not constitute an absurd result.

¶ 30. Our juvenile justice system is equipped to prevent most of the mischief suggested by the State. Although the court and district attorney both lack direct statutory authority to oversee the process of creating a deferred prosecution agreement when such an agreement is ordered under § 938.21(7), there remain practical avenues for oversight. The courts have oversight authority over intake workers under Wis. Stat. §§ 938.067(9) and 938.245(9). These statutes appear to grant courts the authority to require intake workers who fail to obtain cooperation to notify the

issuing court or the district attorney. Moreover, if a juvenile, a parent, or a guardian fails to cooperate, nothing prevents an intake worker from asking the district attorney to move the court for reconsideration of its dismissal order.[9]

¶ 31. Accordingly, while we share some of the concerns expressed by the State, its arguments do not demonstrate that our reading of the statutes leads to absurd results.[10]

---

[9] We also note that the statutes provide a mechanism for returning the matter to the district attorney when a juvenile violates a deferred prosecution agreement or when a juvenile, a juvenile's parent, a guardian, or a legal custodian terminates an agreement. *See* WIS. STAT. § 938.245(4) and (7).

[10] Having concluded that the plain language of the statute defeats the State's argument that there is a district-attorney-consent requirement in § 938.21(7), and having rejected the State's absurd results arguments, we need not address the State's legislative intent arguments. However, we choose to respond to the State's assertion that our construction is at odds with legislative intent, as revealed by the legislature's response to *In re Gault*, 387 U.S. 1 (1967). We agree with the State that *In re Gault* granted due process rights to juveniles and that our legislature responded by creating an adversarial system that, in many respects, approximates the adult criminal system. However, the Court in *In re Gault* was concerned with the unbridled discretion held by courts over juveniles and the near total lack of procedural due process in the case before it. The Court's concern was over the power of judges to impose severe sanctions against juveniles without due process. Our construction of § 938.21(7) does nothing to undermine the due process rights of juveniles. In fact, from a juvenile's point of view, our construction provides additional due process by providing an additional check on prosecutorial discretion. Further, it should be apparent from the full discussion in this opinion that even if we

### D. Whether Our Construction Constitutes an Unconstitutional Infringement on the Power of District Attorneys

¶ 32. The State argues that even if our reading of WIS. STAT. § 938.21(7) is correct, the statute violates the separation-of-powers doctrine of the Wisconsin Constitution by transferring power "within the delegated province" of district attorneys to courts and intake workers. In support, the State relies on a number of cases discussing the district attorney's charging authority in criminal cases.[11]

¶ 33. The State's argument puts the cart before the horse. The State complains that, under the circuit court's construction, the legislature has improperly infringed on the constitutionally mandated charging power of district attorneys. But the State has not established its threshold premise that juvenile charging discretion is solely "within the [constitutionally] delegated province" of district attorneys. The State provides no authority for the proposition that the Wisconsin Constitution delegates juvenile charging authority to district attorneys.

---

viewed the relevant portions of §§ 938.21(7), 938.24, and 938.245 as ambiguous, we would nonetheless reject the State's proffered construction.

[11] The State relies on and discusses *State v. Krueger*, 224 Wis. 2d 59, 588 N.W.2d 921 (1999); *State v. Annala*, 168 Wis. 2d 453, 484 N.W.2d 138 (1992); *State v. Braunsdorf*, 98 Wis. 2d 569, 297 N.W.2d 808 (1980); *Thompson v. State*, 61 Wis. 2d 325, 212 N.W.2d 109 (1973); and *State ex rel. Kurkierewicz v. Cannon*, 42 Wis. 2d 368, 166 N.W.2d 255 (1969).

¶ 34. Statutes are "presumed to be constitutional and will not be declared unconstitutional without proof beyond a reasonable doubt." *E.B. v. State*, 111 Wis. 2d 175, 187, 330 N.W.2d 584 (1983). The party challenging a statute must prove it is unconstitutional. *State v. Unnamed Defendant*, 150 Wis. 2d 352, 365, 441 N.W.2d 696 (1989). The State has failed to meet this burden.

*By the Court.*—Orders affirmed.