IN the INTEREST OF ANTONIO M.C., A Person Under the Age of 18:

ANTONIO M.C., Respondent-Appellant,†

v.

STATE of Wisconsin, Petitioner-Respondent. [Case No. 93–0301.]

IN the INTEREST OF STEVEN M.K., A Person Under the Age of 18:

STEVEN M.K., Respondent-Appellant,†

v.

STATE of Wisconsin, Petitioner-Respondent. [Case No. 93–0302.]

Court of Appeals

*Nos. 93–0301, 93–0302. Submitted on briefs October 14, 1993.—Decided February 9, 1994.*

(Also reported in 513 N.W.2d 662.)

†Petition to review denied.
†Petition to review denied.

On behalf of the respondent-appellant Antonio M.C., the cause was submitted on the briefs of *Michael T. Meurer* of *Meurer Law Offices* of Elkhorn. On behalf of the respondent-appellant Steven M.K., the cause was submitted on the brief of *Virginia A. Pomeroy*, assistant state public defender.

On behalf of the petitioner-respondent, the cause was submitted on the briefs of *Phillip A. Koss*, district attorney, and *Diane M. Resch*, assistant district attorney.

Before Anderson, P.J., Nettesheim and Snyder, JJ.

SNYDER, J.  Antonio M.C. and Steven M.K. appeal from nonfinal orders denying their motions to

dismiss delinquency petitions with prejudice under § 48.24(5), STATS.,[1] which requires a court intake worker to recommend that a petition be filed, enter into an informal disposition or close the case within forty days from receipt of delinquency information. Antonio and Steven contend that the court lost jurisdiction when the intake worker failed to satisfactorily complete the intake process within that statutory period. Because we agree with the trial court's conclusion that the intake worker had complied with the § 48.24 intake inquiry scheme in sending the matters to the district attorney and its reasoning that the district attorney would have authority to file the petitions independent of an intake referral petition recommendation, we affirm.

## BACKGROUND

The issues in this case arise out of the delinquency petitions filed by the Walworth County District Attorney alleging that Antonio and Steven were parties to the crimes of burglary and theft in violation of § 943.10, STATS., and § 943.20(1)(a), STATS. Steven is also alleged to have obstructed an officer in violation of § 946.41, STATS.

The procedural facts leading up to the filing of the delinquency petitions are not in dispute. The Delavan police department forwarded its police reports to Walworth County intake worker Charles Mast on October 28, 1992, the date of the alleged violations. Mast prepared an intake disposition report in each case.[2] He

---

[1] Antonio M.C. and Steven M.K. petitioned this court for leave to appeal under § 808.03(2), STATS. The petitions were granted by order dated March 26, 1993.

[2] Walworth County uses an intake document for informational and referral purposes called the "Juvenile Court Intake

forwarded Steven's delinquency file to the district attorney on November 3, 1992, eight days after receipt of the police reports, and forwarded Antonio's file to the district attorney on November 4, 1992, nine days thereafter. The district attorney filed the delinquency petitions on November 20, 1992, within twenty days from the intake referral.

During the intake inquiry procedure, the intake worker must determine "whether the available facts establish prima facie jurisdiction" and "the best interests of the child and of the public with regard to any action to be taken." Section 48.24(1), STATS. After determining that there is prima facie juvenile court jurisdiction and considering the best interests of the child and the public, the intake worker must select from one of three options in deciding the action to be taken: (1) referral to court through the appropriate prosecuting office, *see* § 48.24(3); (2) informal disposition, *see* § 48.24(4); or (3) close the case, *see id.* Section 48.24(5). The intake worker is required to determine which option is appropriate within forty days of receipt of the referral information. *Id.*

---

Disposition Report." The document serves as the notice document to the prosecutor if the intake worker closes the case or enters into an informal disposition, as well as a referral document to the prosecutor if those options are not used. In addition to the general identification information on the child and his/her parents or guardian, it relates the name of the referring agency, the number and type of delinquency allegations, the date the allegations were received, prior referral information, custody information, the date a recommendation was made concerning the intake options, the intake recommendation, the effective dates of an informal disposition if used, and comments of the intake worker.

305

Mast decided not to close the cases or enter into informal dispositions and sent the matters to the district attorney without express recommendations[3] in his reports to file delinquency petitions.[4] Mast later testified that his purpose in sending the matters to the district attorney was that he "wanted the district attorney's office to review the charges, to search the matter for jurisdiction and advise [him] as to whether or not [the district attorney] would approve an informal disposition."

## ISSUES

The primary issue presented is whether strict compliance with the first sentence of § 48.24(5), STATS., that the intake worker "shall recommend" one of the three dispositional options, is necessary for a valid delinquency prosecution. Antonio and Steven argue that

---

[3] In each report Mast typed "SEE COMMENT SCREEN" as his recommendation. His comments were as follows:

**Comments:** [Antonio M.C. report] FELONY CHARGE. NO PRIOR INTAKE RECORD. NOTE POLICE RECORD. PROSECUTOR'S OFFICE IS RESPECTFULLY REQUESTED TO REVIEW AND ADVISE.

**Comments:** [Steven M.K. report] FELONY CHARGE. PROSECUTOR'S OFFICE IS RESPECTFULLY REQUESTED TO REVIEW AND ADVISE. NOTE PRIOR RECORD AT INTAKE AND POLICE RECORDS.

[4] At the motion hearing, Mast testified as follows:

Q. Did you recommend in here for her to file a—or, for the district attorney to file a petition?

A. No.

Q. Did you enter into an informal disposition in this case?

A. No, I did not.

Q. Did you close this case within 40 days.

A. No, I did not.

Mast's admitted failure to "recommend" one of the three options within forty days clearly violates the mandate of § 48.24(5) and requires dismissal of the petitions. We disagree and hold that when an intake worker determines that the juvenile should be referred to the court, § 48.24(3) controls and requires the intake worker to request that the district attorney file a petition. We further conclude that Mast's actions constituted a request to file petitions and therefore complied with the intake duties set forth in § 48.24.

In addition, Steven argues that Mast's failure to make the required recommendation deprived him of a meaningful application of the best interests of the child determination for the district attorney's consideration required under § 48.24(1), STATS. In holding that Mast's referrals to the district attorney were consistent with the intent and purpose of the intake procedure statutes, we conclude that Steven did have the benefit of the intake worker's consideration of his best interests during the intake procedure.

## ANALYSIS

We first address whether the first sentence of § 48.24(5), STATS., must be read as a jurisdictional mandate. Antonio and Steven argue that § 48.24(5) clearly and unambiguously requires that "[t]he intake worker *shall recommend* that a petition be filed . . . within 40 days or sooner of receipt of referral information." (Emphasis added.) They reason that because the intake worker conceded that he never made such a recommendation, the statutory time lapsed without the district attorney obtaining authority to file delinquency petitions, the twenty-day prosecutorial filing period under § 48.25(2)(a) never commenced, and

307

therefore the court erred in not dismissing the delinquency petitions with prejudice.[5]

The State argues that the language relied upon by Antonio and Steven is ambiguous when read in context with other relevant provisions of the juvenile code. The State contends that the trial court properly utilized a statutory scheme analysis in resolving the ambiguity to deny the dismissal motions rather than applying the literal mandate interpretation advanced by Antonio and Steven.

Whether an intake worker must "recommend" that the district attorney file a delinquency petition after determining that court referral is appropriate requires the interpretation of the intake procedure in § 48.24, STATS. The purpose of statutory interpretation is to ascertain and give effect to the legislative intent behind the statute. *P.A.K. v. State*, 119 Wis. 2d 871, 878, 350 N.W.2d 677, 681 (1984). If the statute is clear on its face, this court will not look outside the statute in applying it. *Id*. We attempt to ascertain the legislature's intent by the scope, history, context, subject matter and object of the statute only if the statutory language is ambiguous. *Id*. at 878, 350 N.W.2d at 681-82. A statute is ambiguous if it is capable of being understood by a reasonably well-informed person in either two or more senses. *Id*. at 878-79, 350 N.W.2d at 682.

We agree that standing alone, § 48.24(5), STATS., appears unambiguous and that the intake worker must

---

[5] Section 48.24(5), STATS., states in part that "[t]he judge shall dismiss with prejudice any such petition which is not referred or filed within the time limits specified within this subsection."

recommend one of the three dispositional options within forty days. However, we may not read sections of a statute in a vacuum but must read them together in order to best determine the plain and clear meaning of the statute. *J.L.W. v. Waukesha County*, 143 Wis. 2d 126, 130, 420 N.W.2d 398, 400 (Ct. App. 1988). The cardinal rule is that the purpose of the whole act will be sought and favored over a construction that would defeat the manifest object of the act. *Id.* When two or more statutes are involved, we seek to construe them so that they are harmonious. *See State v. Fouse*, 120 Wis. 2d 471, 477-78, 355 N.W.2d 366, 369 (Ct. App. 1984).

We have previously held that it is appropriate to read § 48.24(5), STATS., together with other sections of ch. 48, STATS., in order to best determine the plain and clear meaning of the statute. *J.L.W.*, 143 Wis. 2d at 130, 420 N.W.2d at 400. Reviewing § 48.24 as a whole, we discover that the intake options expressed in the first sentence of § 48.24(5) are more specifically addressed in § 48.24(3) and (4). In addition, general written policies promulgated pursuant to § 48.24(6) must be followed by the intake worker in meeting his or her intake responsibilities.[6]

Section 48.24(3), STATS., addresses the intake worker's determination that the child be referred to court rather than the two lesser options of handling the matter informally or closing the file. Section 48.24(3) recognizes that the intake worker has no authority to

---

[6] Section 48.24(6), STATS., requires that "[t]he intake worker shall perform his or her responsibilities under this section under general written policies which the judge shall promulgate under s. 48.06(1) or (2)." We will include those policies as necessary to decide the appellate issues.

file a delinquency petition[7] and states that the intake worker "*shall request* that the district attorney . . . file a petition." (Emphasis added.) This is different from the language of § 48.24(5), which states that the intake worker "shall recommend" one of the three options.

While each term is preceded by "shall," the terms "recommend" and "request" have different meanings that confuse an intake worker's court referral responsibility. The term "request" is defined as "the act of asking for something." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1929 (unabr. 1976). In contrast, the term "recommend" has stronger connotations and is defined as to "indicate as being one's choice for something or as otherwise having one's approval or support." *Id.* at 1897.

The "Model Judicial Policies" adopted by Walworth County summarize an intake worker's responsibilities. Concerning the time limits for intake decisions:

> Within *forty (40) days* [emphasis in original] of receipt of referral information, intake worker must determine whether to
>
> a. *Refer case for formal court action*, or
>
> b. Enter into an informal disposition agreement, or
>
> c. Close case.

MODEL JUDICIAL POLICIES FOR JUVENILE COURT INTAKE, Ch. 4, at 4-5 (1985) (emphasis added). After conducting the intake inquiry, the intake worker has three options: (1) close the case, (2) enter into an informal

---

[7] Section 48.25(1), STATS., requires that "[i]f a petition under s. 48.12 [delinquency] is to be filed, it shall be prepared, signed and filed by the district attorney."

disposition, or (3) *recommend filing of a petition. See id.* at 4-13. If the intake worker's determination is to refer the case to court:

> Intake worker *requests* [emphasis added] filing of petition by the district attorney . . . . If intake worker refuses to *recommend* [emphasis added] filing petition, prosecutor has *20 days* [emphasis in original] in delinquency cases to file petition.

*Id* . at 4-21. However, these policies merely perpetuate the ambiguity by using both "recommend" and "request."

In resolving the ambiguity, we hold that § 48.24(3), STATS., is the operative statute concerning the procedure for formal referrals to court and, therefore, the term "request" used in that statute has greater meaning than would the term "recommend" in such referrals. The primary focus of § 48.24(5) language is to set a forty-day time limit for the § 48.24(3) referral. The first sentence merely reiterates the three dispositional options from which the intake worker must choose. In other words, we interpret § 48.24(5) to mean that the intake worker must accomplish one of the options outlined in § 48.24(3) or (4) within forty days of receipt of referral information. Such an interpretation does not change the meaning of the provision or the intake procedure.

Our conclusion that an intake worker need only *request* that a delinquency petition be filed if court referral is deemed appropriate, as opposed to *recommend*, is further buttressed by the district attorney's inherent charging power. We initially note that the § 48.24, STATS., intake process is clearly the function of the intake worker who labors under the direction and supervision of the court. *See* § 48.06(1)(a)2 & (2)(a),

311

STATS. The court does not, however, have any supervisory authority over the district attorney. That distinction supports the trial court's conclusion that an intake worker's actions cannot legally or logically control the district attorney's charging authority.[8]

We also find the language of § 48.24(4), STATS., the operative statute concerning an intake decision other than court referral, to be instructive. The statute allows the intake worker to enter into an informal disposition or to close the case on his or her own authority. Such determinations are not final, however, and are subject to the district attorney's review and reversal.[9] In addition, § 48.24(4) suggests that the intake dispositional options may be foreclosed by the district attorney filing a delinquency petition prior to the completion of the full intake option process.[10] Therefore, contrary to the arguments of Antonio and Steven, § 48.24(4) indicates that the intake decision may be

---

[8] The trial court found that "Mr. Mast is an officer of the court and is my intake worker. The district attorney is a branch of the executive. [Mr. Mast] could possibly say I'm not going to make any decision. In that event then could keep the executive from ever filing a petition. I don't think that's the statutory scheme here."

[9] Section 48.24(5), STATS., provides that "[n]otwithstanding the requirements of this section, the district attorney may initiate a delinquency petition under s. 48.25 within 20 days after notice that the case has been closed or that an informal disposition has been made."

[10] Section 48.24(4), STATS., reads as follows:

If the intake worker determines as a result of the intake inquiry that the case should be subject to an informal disposition, or should be closed, the intake worker shall so-proceed. If a petition has been filed, informal disposition may not occur or a case may not be closed unless the petition is withdrawn by the district attorney . . . or is dismissed by the judge.

subject to the district attorney's filing of a petition rather than the district attorney's prosecution authority being subject to an intake worker's work product.

In sum, we conclude that the trial court's decision that the language of § 48.24(5), STATS., must be read in conjunction with other juvenile code provisions in the intake procedure statutory scheme is correct. To read it otherwise would ignore the language of § 48.24(3) and (4) concerning the intake worker's dispositional options in favor of contradictory language in § 48.24(5), whose purpose is to set a time limit for selecting those options.

## INTAKE WORKER PROCEDURE

Having determined that an intake worker may only request that the district attorney file a delinquency petition and that an intake recommendation is not necessary, we now turn to whether Mast followed the intake procedures and made a request that the district attorney file a petition. Whether an intake worker complied with the requirements of a procedural statute requires the application of a statute to a particular set of facts. This presents a question of law which we decide independently of the trial court's determination. *Artis-Wergin v. Artis-Wergin,* 151 Wis. 2d 445, 452, 444 N.W.2d 750, 753 (Ct. App. 1989).

It is clear that Mast was in a position to choose one of the three available statutory intake options at the time that he sent the delinquency files and reports to the district attorney. While it is true that he did not specifically recommend that a delinquency petition be filed, his testimony and comments indicate that he believed the referrals to be legally sufficient and con-

313

sistent with the statutory intake procedure and the adopted "Model Judicial Policies."[11] We agree.

Mast stated on each report that the "PROSECUTOR'S OFFICE IS RESPECTFULLY REQUESTED TO REVIEW AND ADVISE." In addition, at the motion hearing, Mast stated that his intent was that he "wanted the district attorney's office to review the charges . . . and advise [him] as to whether or not [the district attorney] would approve an informal disposition."

Reviewing Mast's written comments and his testimony, we conclude that his actions constituted a request that the district attorney review the matters and file a delinquency petition if he so desired. If not, it is clear that Mast wanted the matters returned for informal dispositions. Such a procedure is consistent with the district attorney's authority under § 48.25(2)(a), STATS., to reverse or let stand any determination made by the intake worker.[12] The only reason

---

[11] Mast testified as follows at the motion hearing:

Q. Mr. Mast, did you after conducting your intake inquiry refer the matter to the district attorney's office within 40 days?

A. I believe I did. My records show that I had received this matter from the police department—the alleged offense is alleged to have occurred on October 25, 1992, I received it on October 28, 1992, and my records show that I submitted it for approval or decision from the district attorney's office on November 3, 1992, and November 4. . . ..

Q. When you filed it with the district attorney's office, did you do so following your usual procedure in these matters?

A. After screening the case and, you know, reviewing the police reports, yes.

[12] However, we encourage intake workers to follow the procedures specifically set forth in the statutes. We are at a loss as

Mast would have referred the matter to the district attorney would be for the district attorney to make a decision on filing a petition. If Mast had decided to close the case or proceed with informal disposition, he only needed to give the district attorney written notice of that decision. *See* § 48.24(5), STATS. Instead, Mast acted promptly in referring the matters to the district attorney consistent with the general written intake policy that "[w]hile forty (40) days are available, the best interests of the child and public suggest that the intake decision be made as soon as possible." *See* MODEL JUDICIAL POLICIES, commentary at 4-5.

Antonio and Steven also argue that the intake worker failed to make the determinations required under § 48.24(1), STATS. Under that section, a juvenile who is alleged to be delinquent is initially referred to an intake social worker who determines: (1) whether the available facts establish that the court has jurisdiction over the juvenile, and (2) the best interests of the juvenile and of the public with respect to any action to be taken in the case. Section 48.24(1). We disagree.

During the motion hearing, Mast testified that he followed his usual procedure before sending the matters to the district attorney:

Q. When you filed [the matters] with the district attorney's office, did you do so following your usual procedure in these matters?

A. After screening the case and, you know, reviewing the police reports, yes.

As to Mast determining if the available facts established prima facie jurisdiction, he testified that he did

to why the intake worker here failed to do so other than his desire not to waste time and effort.

find probable cause supporting the allegations.[13] Mast's testimony supports the trial court's finding that the statutory intake determinations were met.

Steven also argues that without a recommendation from the intake worker to file delinquency petitions, the intake procedure was incomplete and the district attorney acted upon a referral that failed to properly consider his best interests under § 48.24(1), STATS. Section 48.24(1) requires that the intake worker consider the best interests of the child and the public prior to a court referral. Because we hold that the best interests of Steven, Antonio and the public were considered, we find no merit in Steven's argument.[14]

---

[13] Mast testified in part as follows:

Q. Well, you found jurisdiction as far as the child was concerned because of his age?

A. Yes.

Q. And the venue of the alleged act?

A. Yes.

Q. And the elements of the charge were in the police report, were they not?

A. Yes.

Q. So you've got jurisdiction as far as that's concerned. And were you—then I take it you were aware that the next issue is the best interests of the child and public and you were asking for the district attorney's insight as to what the public view would be then?

A. That is correct.

[14] We are unaware of any requirement that the district attorney consider the best interests of the child as paramount in charging felony delinquencies. Steven cites no authority for that argument. We will not consider an argument that is inadequately briefed. *See Vesely v. Security First Nat'l Bank of Sheboygan Trust Dep't*, 128 Wis. 2d 246, 255 n.5, 381 N.W.2d 593, 598 (Ct. App. 1985).