STATE of Wisconsin EX REL. Steven M. RUPINSKI,
Petitioner-Appellant,

v.

Judy SMITH, Warden, Oshkosh Correctional
Institution, Respondent-Respondent.

Court of Appeals

*No. 2005AP1760. Submitted on briefs August 31, 2006.
—Decided November 21, 2006.*

2007 WI App 4

(Also reported in 728 N.W.2d 1.)

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *Daniel R. Drigot*, Cedarburg.

On behalf of the respondent-respondent, the cause was submitted on the brief of *Peggy A. Lautenschlager*, attorney general and *Shunette T. Campbell*, assistant attorney general.

Before Wedemeyer, P.J., Fine and Curley, JJ.

¶ 1. WEDEMEYER, P.J.    Steven M. Rupinski appeals from an order denying his petition for writ of *habeas corpus*. He claims the trial court erred in affirming the authority of the Department of Corrections

(DOC) to revoke his status of extended supervision and to proceed to reconfine him. Because the DOC had authority to revoke his prematurely obtained status of extended supervision and reconfine him, we affirm.

## BACKGROUND

¶ 2. On January 10, 2001, Rupinski was convicted of possession with intent to deliver marijuana in Milwaukee County case No. 00CF5659. As part of his sentence, he received a term of forty-eight months in the Wisconsin state prison system which was imposed, but stayed, with eighteen months to be served as initial confinement, consecutive to any other sentence, and the remaining thirty months would be served under extended supervision.

¶ 3. On March 12, 2001, Rupinski was convicted of Operating a Vehicle without Owner's Consent, party to a crime, in Winnebago County case No. 00CF365. On March 25, 2001, he was sentenced to three years' probation with further sentence withheld.

¶ 4. On August 22, 2002, he was convicted of second-degree sexual assault of a child in Milwaukee County case No. 02CF2657 and sentenced on October 10, 2002, to a term of ten years in the Wisconsin state prison system, with two years to be served as initial confinement, consecutive to any other sentence, with the remaining eight years under extended supervision. The trial court granted him 165 days credit for pre-incarceration confinement. On January 10, 2003, the court vacated the 165-day credit previously granted. For unknown reasons, the order of vacation escaped the attention of the DOC. As a result, Rupinski was released from his initial confinement on April 6, 2004—165 days prematurely.

¶ 5.   Following the conviction in Milwaukee County for the sexual assault crime, Rupinski was returned to Winnebago County where his earlier imposed probation was revoked and he was sentenced to four years in the Wisconsin state prison system with two years of initial confinement and two years of extended supervision, concurrent with any other sentence.

¶ 6.   As noted above, Rupinski was released from the Wisconsin state prison system on April 6, 2004, after he served the combined consecutive sentences of eighteen months' initial confinement in case No. 00CF5659 and two years' initial confinement in case No. 02CF2657. Within forty-five days of his release to extended supervision, he was returned to custody for alleged various violations of the rules of extended supervision. He was subsequently revoked in all three of the cases listed above. He was first returned to Winnebago County in case No. 00CF365 where, on August 13, 2004, he was reconfined for one year, six months, and eight days. Next, he was returned to Milwaukee County in case No. 00CF5659 where, on October 8, 2004, he was reconfined for two years.

¶ 7.   Lastly, he was returned to the sentencing court in Milwaukee County in case No. 02CF2657. It was during this hearing that it was discovered that the Wisconsin state prison system had released Rupinski some months short of the completion of his period of initial confinement. It was agreed by all parties that the DOC had not taken away from Rupinski the 165–day credit that the sentencing judge had vacated on January 10, 2003. As a consequence, the sentencing judge determined that Rupinski had been revoked improperly and issued an order on February 9, 2005, vacating his revocation and ordered him to be returned to prison to complete the original term of initial confinement.

¶ 8. On March 3, 2005, the State moved to reconsider the February 9th order. In the meantime, the DOC conceded error by the premature release, but objected to the February 9th order on the grounds that a revocation decision can only be reversed in an action for *certiorari* pursuant to WIS. STAT. § 302.113(9)(g) (2003–04).[1] Everyone agreed with this position, conceding that the underlying revocation decision could only be addressed by writ of *certiorari* or by writ of *habeas corpus,* if *certiorari* was unavailable. The sentencing court then orally vacated its February 9th order and, on March 31, 2005, ordered Rupinski reconfined for a period of two years.

¶ 9. On May 3, 2005, Rupinski filed a petition for writ of *habeas corpus* in Milwaukee County Circuit Court. In essence, Rupinski claimed his initial term of confinement continued to run even after he was released through no fault of his own. He also asserted that the term continued to run after he was returned to custody on May 19, 2004. Thus, his initial period of confinement should have been completed on September 18, 2004, when he should have been eligible for release to extended supervision. On May 13, 2005, the court considered the two Milwaukee County cases and ruled Rupinski was not entitled to relief because: (1) to interpret the statutes as suggested by Rupinski would produce an absurd result; and (2) he was under the custody and control of the DOC for the entire length of his sentence and so was liable for revocation during the entire period.[2] Rupinski now appeals.

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

[2] The trial court declined to rule on Winnebago County case No. 00CF365. As a result, Rupinski filed a separate petition for writ of *habeas corpus* in Winnebago County, case No. 05CV681,

## ANALYSIS

### *STANDARDS OF REVIEW AND APPLICABLE LAW*

██

¶ 10. A defendant petitioning for writ of *habeas corpus* has the burden "of showing that his detention is illegal by a preponderance of the evidence." *State ex rel. McMillian v. Dickey*, 132 Wis. 2d 266, 278, 392 N.W.2d 453 (Ct. App. 1986), *overruled on other grounds by State ex rel. Coleman v. McCaughtry*, 2006 WI 49, 290 Wis. 2d 352, 714 N.W.2d 900.

██

¶ 11. "A circuit court's order denying a petition for writ of *habeas corpus* presents a mixed question of fact and law." *State v. Pozo*, 2002 WI App 279, ¶ 6, 258 Wis. 2d 796, 654 N.W.2d 12. "Factual determinations will not be reversed unless clearly erroneous." *Id.* The circuit court's legal conclusions are subject to independent review. *McMillian*, 132 Wis. 2d at 276.

### *APPLICATION*

¶ 12. Rupinski's principle assertion of trial court error is his claim that the DOC lacked jurisdiction to revoke his extended supervision because he was prematurely released to extended supervision and consequently it was improper for the trial court to order reconfinement because he was not properly on ex-

---

with the goal of joining that case in this appeal. Rupinski, however, withdrew his petition in that case on September 26, 2005, because the briefing schedule had not been set and because the case would be fully discharged as of November 2005. Thus, the issues would be moot. He therefore chose not to appeal the Milwaukee trial court ruling, which declined to assume jurisdiction over Winnebago County case No. 00CF365.

tended supervision, and thus not subject to supervision rules. Based upon these premises, he asks for sentence credit from April 6, 2000, and a determination that he has been eligible for release to extended supervision since September 18, 2004. For reasons to be stated, we reject his contention and sequential request.[3]

**[5, 6]**

¶ 13.   This is an issue of first impression involving the application of statutes to undisputed facts which we review independently. Furthermore, this challenge requires us to engage in statutory interpretation which we also review independently, *Reyes v. Greatway Insurance Co.*, 227 Wis. 2d 357, 364–65, 597 N.W.2d 687 (1999), benefiting from the analysis of the trial court.

---

[3] The State challenges the venue of Milwaukee County as improper because Rupinski is confined at the Oshkosh Correctional Institution located in Winnebago County. The State argues that, as a result, the writ was improperly filed under Wis. Stat. § 801.50(4).

The proper venue for writ of *habeas corpus* shall be in the county "[w]here the plaintiff was convicted or sentenced if the action seeks relief from a judgment of conviction or sentence under which the plaintiff's liberty is restrained" or "[w]here the liberty of the plaintiff is restrained if the action seeks relief concerning any other matter relating to a restraint on the liberty of the plaintiff." Wis. Stat. § 801.50(4)(a), (b).

However, a "court may at any time, upon its own motion, the motion of a party or the stipulation of the parties, change the venue to any county in the interest of justice or for the convenience of the parties or witnesses." Wis. Stat. § 801.52.

We note from an examination of the record that Rupinski moved the circuit court of Milwaukee to exercise its discretion pursuant to Wis. Stat. § 801.52 to permit the venue to be Milwaukee County. For reasons of judicial economy, the motion was granted. Based upon the record, the trial court did not erroneously exercise its discretion.

¶ 14. Statutory interpretation begins with the language of the statute itself. *Alberte v. Anew Health Care Servs., Inc.*, 2000 WI 7, ¶ 10, 232 Wis. 2d 587, 605 N.W.2d 515. Courts, however, must not examine a portion of a statute in isolation ignoring the overall intent of the statutory scheme. *Id.* Courts have "some scope for adopting a restricted rather than a literal or usual meaning of its words where acceptance of that meaning . . . would thwart the obvious purpose of the statute." *Id.* (citations omitted). "When a literal interpretation produces absurd or unreasonable results, or results that are clearly at odds with the legislature's intent, 'our task is to give some alternative meaning' to the words," *id.* (citation omitted), consistent with the reasonably ascertained intent.

¶ 15. Properly framed, the question before us is whether the DOC and the Division of Hearings and Appeals (Division) had jurisdiction to revoke extended supervision for a violation of the rules of supervision when an inmate (Rupinski) was erroneously released to supervision while serving a bifurcated sentence and the initial term of incarceration had not been completed.

¶ 16. Under Wisconsin's Truth-in-Sentencing formulation, the legislature has required the following as relevant to this dispute:

> **(2)** STRUCTURE OF BIFURCATED SENTENCES. A bifurcated sentence is a sentence that consists of a term of confinement in prison followed by a term of extended supervision under s. 302.113. The total length of a bifurcated sentence equals the length of the term of confinement in prison plus the length of the term of extended supervision.
>
> . . . .

**(7)** No Discharge. The department of corrections may not discharge a person who is serving a bifurcated sentence from custody, control and supervision until the person has served the entire bifurcated sentence.

Wis. Stat. § 973.01(2), (7). Wisconsin Stat. ch. 302 and, more specifically, Wis. Stat. § 302.113(2), (4) and (7) relating to extended supervision provide:

**(2)** Except as provided in subs. (3) and (9), an inmate subject to this section is entitled to release to extended supervision after he or she has served the term of confinement in prison portion of the sentence imposed under s. 973.01, as modified by the sentencing court under sub. (9g) or s. 302.045 (3m) (b) 1., 302.05 (3) (c) 2. a., or 973.195 (1r), if applicable.

. . . .

**(4)** All consecutive sentences imposed for crimes committed on or after December 31, 1999, shall be computed as one continuous sentence. The person shall serve any term of extended supervision after serving all terms of confinement in prison.

. . . .

**(7)** Any inmate released to extended supervision under this section is subject to all conditions and rules of extended supervision until the expiration of the term of extended supervision portion of the bifurcated sentence. The department may set conditions of extended supervision in addition to any conditions of extended supervision required under s. 302.116, if applicable, or set by the court under sub. (7m) or s. 973.01 (5) if the conditions set by the department do not conflict with the court's conditions.

¶ 17.  Rupinski claims that the plain language of Wis. Stat. chs. 302 and 973 requires that he must have

completed the confinement portion of his sentence before he is eligible for extended supervision. Because, at the time of the conduct alleged in the Division's revocation action, he was still some months short of completion of the confinement portion of his sentence, the DOC had no authority to place him on extended supervision and thus, he could not have been subject as a supervisee to revocation action by the State.

¶ 18. To begin our examination of Rupinski's claim of error, we note it is undisputed that he had not completed serving his entire bifurcated sentence, that he in fact was released (in error) to extended supervision status under the provisions of Wis. Stat. § 302.113(9)(am), and advised of the rules and conditions of his status on extended supervision. Nevertheless, he violated those terms and was returned to custody. Additionally, it is uncontroverted that until Rupinski has served his entire bifurcated sentence, he remains under the custody, control, and supervision of the DOC pursuant to Wis. Stat. § 973.01(7).

¶ 19. At the outset, we agree with Rupinski that, standing alone, the above recited statutes appear unambiguous and that a period of extended supervision shall not commence until after the completion of confinement in prison. We may, however, not read portions of a statute

in a vacuum but must read them together in order to best determine the plain and clear meaning of the statute. The cardinal rule is that the purpose of the whole act will be sought and favored over a construction that would defeat the manifest object of the act. When two or more statutes are involved, we seek to construe them so that they are harmonious.

*Antonio M.C. v. State*, 182 Wis. 2d 301, 309, 513 N.W.2d 662 (Ct. App. 1994) (citations omitted).

¶ 20.   With the enactment of Truth-in-Sentencing, the sentencing implications of probation and parole were significantly altered by the creation of the new procedure denominated "extended supervision." This new methodology, however, did not eliminate the pre-existing goals of probation and parole; i.e., rehabilitation and protection of the community. Rather, they were subsumed within the goals of extended supervision and became the same. Furthermore, a review of the provisions of WIS. STAT. ch. 302 clearly demonstrates that a person on extended supervision, as a parolee or probationer, is within the custody of the DOC and similarly subject to all of the conditions and rules of supervision, the violation of which could be cause for revocation.

¶ 21.   As with compliance with rules and conditions for parole and probation, noncompliance necessitates reasonable sanctions, so too with the application of a similar regimen, extended supervision. The objectives are the same. Thus, the legislative revision of the sentencing laws from indeterminate to determinate sentencing in Truth-in-Sentencing did not effectuate an essential difference in the goals of sentencing.

¶ 22.   The State contends that Rupinski's argument of the lack of jurisdiction to sanction him because he was prematurely placed on extended supervision, would in "effect allow an individual who was released early to violate the terms of extended supervision without ever facing revocation . . . . that would produce an absurd result." In response, Rupinski offers several reasons why the rejection of the DOC and Division's authority to revoke and pursue reconfinement would not frustrate the purposes of the legislative goals.

¶ 23. First, he acknowledges the holding in *State ex rel. Riesch v. Schwarz*, 2005 WI 11, 278 Wis. 2d 24, 692 N.W.2d 219, that in determining the status of prisoners, substance should prevail over form. He argues, however, that *Reisch*'s status was the product of a limited court-made rule, whereas his status is the result of a bright-line legislative formulation and thus, in his case, form (the calls of Wis. Stat. §§ 973.01 and 302.113(3)) trumps any argument attempting to override substance. We reject his contention. A person sentenced under a bifurcated sentence is under the continual supervision of the DOC whether the person is in custody or released on extended supervision. Thus, the DOC has the authority to revoke a person's extended supervision even under the circumstances presented in this case.

¶ 24. Rupinski chooses to ignore that he had the *de facto* status of an extended supervisee notwithstanding his *de jure* status as a confinee. His was a status of duality. He quite naturally accepted conditional release and agreed to abide by the required reasonable rules and regulations. *See* Wis. Stat. § 302.113(7). Upon these terms, he was released to extended supervision. No one now claims, much less suggests, he was out on unconditional release nor that he did not comply with the conditions of his supervision. What is advocated now is that because of his erroneous early release, he should be absolved of any rule violations under the procedures that the legislature specifically enacted to fulfill the goals of the Truth-in-Sentencing legislation:    rehabilitation and the protection of the community. We reject this illogical assertion.

¶ 25. Upon release, Rupinski agreed to abide by certain terms and conditions. Wisconsin Stat.

§ 302.113(9)(am) provides that: "If a person released to extended supervision under this section violates a condition of extended supervision, the reviewing authority may revoke the extended supervision of the person." That is exactly what happened here. Section 302.113(9) provides that the DOC is "the reviewing authority." In addition, every administrative agency has those "necessarily implied" powers to effectuate its legislatively imposed mandate, unless the scope of those powers are clipped by statute. *See State ex rel. Treat v. Puckett*, 2002 WI App 58, ¶ 10, 252 Wis. 2d 404, 643 N.W.2d 515. Here, the "necessarily implied" powers included revoking a person's extended supervision for violating the terms and conditions of that supervision when that person was erroneously released from custody 165 days early because of a technical error.

¶ 26.  Next, Rupinski argues that the process of revocation and reconfinement is not necessary as argued by the State because he is subject to the authority of the Wisconsin prison system and could have been returned to custody at any time. We do not disagree with Rupinski's conclusion, that he may be subject to such authority, but to then conclude that the process of revocation and reconfinement is not necessary leaves the whole process without an enforcement mechanism which again points to absurdity.

¶ 27.  Rupinski cannot ignore the fact that for persons subject to the Truth-in-Sentencing provisions, revocation and reconfinement proceedings are now the only recognized means to seek sanctions for alleged violations of the rules of supervision.

¶ 28.  Lastly, Rupinski claims that due to the DOC's error, he is subject to a harsher punishment for his non-criminal acts. We summarily reject this assertion because he is subject to the same reasonable

penalties that any other individual on extended supervision faces if he or she decides to violate the rules and conditions of supervision. Rupinski's claim is without support in law or fact.

¶ 29.    Rupinski's portrayal of the rules of statutory construction notwithstanding, we iterate, it is a paramount rubric of statutory construction that a part of a statute, no matter how plainly expressed, ought not be read to produce a result that defeats the objective of the statutory enactment. Even "plain meaning" must yield when faced with the threat that the intent of the law giver may be subverted.

¶ 30.    We cannot imagine a rationale acceptable to our legislature that would permit the unintended result suggested by Rupinskithat an administrative error of such miniscule dimension could serve to thwart the purpose of the statute. Such rationale defies common sense. To accept Rupinski's reasoning would make a mockery of a reasonably crafted scheme of supervision for the rehabilitation of convicted individuals and the better protection of the community. We conclude that the legislature could not have reasonably intended such a result. We therefore affirm the order of the trial court.[4]

*By the Court.*—Order affirmed.

---

[4.] We decline to address any other issues for the following principles. If a decision on one point disposes of an appeal, an appellate court will not decide other issues raised. *Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663 (1938); *Sweet v. Berge*, 113 Wis. 2d 61, 67, 334 N.W.2d 559 (Ct. App. 1983). Moreover, cases should be decided on the narrowest possible grounds. *State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989).