STATE of Wisconsin, Plaintiff-Respondent,

v.

Richard G. GALVAN, Defendant-Appellant.†

Court of Appeals

*No. 2006AP2052–CR. Submitted on briefs May 31, 2007.
—Decided June 20, 2007.*

2007 WI App 173

(Also reported in 736 N.W.2d 890.)

† Petition to review denied 9/10/07.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Paul G. LaZotte*, of the *Office of the State Public Defender*.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Peggy A. Lautenschlager*, attorney general, and *Michael C. Sanders*, assistant attorney general.

Before Snyder, P.J., Nettesheim and Anderson, JJ.

¶ 1. NETTESHEIM, J. As part of Richard G. Galvan's bifurcated sentence for homicide by intoxicated use of a vehicle, the trial court ordered Galvan to pay $4000 to Mothers Against Drunk Driving (MADD) at the rate of $1000 during each of the four years of his extended supervision. Galvan challenged the order by postconviction motion asserting that the court failed to determine his ability to pay pursuant to Wis. Stat. § 973.06(1)(f)1. (2005–06),[1] which governs the taxing of costs, fees and surcharges. The court denied the motion, ruling that the surcharge was imposed as a condition of Galvan's extended supervision pursuant to Wis. Stat. § 973.01(5) and (8), which do not expressly require an ability-to-pay determination. Galvan appeals. We uphold the trial court's ruling.

¶ 2. The essential facts are few and uncontested. Galvan pled guilty to homicide by intoxicated use of a vehicle after rear-ending a car and mortally injuring the driver. The trial court sentenced Galvan to a bifurcated sentence comprising eleven years of confinement followed by four years of extended supervision. One of the conditions of extended supervision required Galvan to make four annual $1000 contributions to MADD, be-

---

[1] All references to the Wisconsin Statutes are to the 2005–06 version unless otherwise noted.

ginning six months after his release to extended supervision. Galvan moved for postconviction relief, contending that the court erred by ordering the contribution without first assessing his financial ability to make the payments pursuant to Wis. Stat. § 973.06(1)(f)1. He also asserted that the record did not demonstrate that he would have the means to make such payments upon his release to extended supervision in 2017. Galvan asked the court to eliminate this condition of the extended supervision.

¶ 3. The trial court summarily denied Galvan's motion, stating that the contribution to MADD was not made pursuant to Wis. Stat. § 973.06, but pursuant to Wis. Stat. § 973.01(5) and (8), governing conditions of extended supervision, which are silent as to any ability-to-pay-determination.

## DISCUSSION

### The Statutes

¶ 4. We begin with a brief summary of each of the statutes that we will discuss in greater detail as we address Galvan's arguments:

1. Wisconsin Stat. § 973.01(5) authorizes a trial court to impose conditions of extended supervision. Subsection (8)(a)5. requires the court to advise a defendant that a violation of such conditions may result in the person being returned to prison.

2. Wisconsin Stat. § 302.113(7m)(a) and (e)1. permit an inmate to petition the sentencing court within one year of scheduled release to extended supervision to modify any condition of such supervision.

3. Wisconsin Stat. § 973.06(1) authorizes a trial court to tax costs, fees and contribution surcharges against a

471

defendant. If the court taxes a contribution surcharge against a defendant, § 973.06(1)(f)1. requires the court to determine that the defendant has the financial ability to pay the surcharge and identifies the kind of organization or agency that qualifies to receive the contribution.

4. WISCONSIN STAT. § 973.09(1x) authorizes a trial court to impose a contribution surcharge to an organization or agency specified in § 973.06(1)(f)1. as a condition of probation if the court has determined that the defendant has the ability to pay.

¶ 5.  In summary, WIS. STAT. § 973.01(5) does not expressly require a sentencing court to make an ability-to-pay determination when the court orders a contribution payment as a condition of extended supervision. However, the court must make such a determination when a contribution surcharge is taxed against a defendant under WIS. STAT. § 973.06(1) or when a contribution surcharge is imposed as a condition of probation under WIS. STAT. § 973.09(1x).

### Galvan's Arguments

¶ 6.  Galvan does not contend that the MADD contribution order is itself unreasonable or inappropriate. Nor do we read Galvan to argue that a trial court cannot impose a contribution payment as a condition of extended supervision. Rather, Galvan contends that the obligation imposed here is, as a matter of law, a contribution surcharge under WIS. STAT. § 973.06(1)(f)1., and so requires a determination of his financial ability to pay. More to the point, Galvan argues that the specific provisions of § 973.06, which expressly reference a contribution surcharge and require an ability-to-pay determination, govern over the general provisions of

Wis. Stat. § 973.01(5), the extended supervision statute, which does not reference a contribution surcharge and does not have any "ability to pay" language.

¶ 7. The authority to impose a particular criminal disposition must derive from the statutes. *State v. Torpen*, 2001 WI App 273, ¶ 7, 248 Wis. 2d 951, 637 N.W.2d 481. The issue posed, therefore, is one of statutory construction, the primary goal of which is to ascertain the legislature's intent. *State v. Neave*, 220 Wis. 2d 786, 789, 585 N.W.2d 169 (Ct. App. 1998). When multiple statutes are contained in the same chapter and assist in implementing the chapter's goals and policy, the statutes should be read *in pari materia* and harmonized if possible. *State v. Amato*, 126 Wis. 2d 212, 216, 376 N.W.2d 75 (Ct. App. 1985). If two statutes relating to the same subject matter conflict, the specific controls the general unless it appears that the legislature intended the general statute to prevail. *Id.* at 217. In all cases we must construe statutes so as to avoid an absurd or unreasonable result. *Town of Avon v. Oliver*, 2002 WI App 97, ¶ 7, 253 Wis. 2d 647, 644 N.W.2d 260.

¶ 8. Wisconsin Stat. § 973.01(5) provides in its entirety that "[w]henever the court imposes a bifurcated sentence under sub. (1), the court may impose conditions upon the term of extended supervision." The statute grants a court "broad, undefined discretion" in imposing conditions of extended supervision, *State v. Larson*, 2003 WI App 235, ¶ 6, 268 Wis. 2d 162, 672 N.W.2d 322, as long as the conditions are reasonable and appropriate, *State v. Koenig*, 2003 WI App 12, ¶ 7, 259 Wis. 2d 833, 656 N.W.2d 499.

¶ 9.   WISCONSIN STAT. § 973.06 governs the taxing of costs, fees and surcharges, and provides in relevant part:

> **Costs, fees, and surcharges. (1)** Except as provided in s. 93.20, the costs, fees, and surcharges taxable against the defendant shall consist of the following items and no others:
>
> . . . .
>
>    (f) 1. An amount determined by the court to make a reasonable contribution surcharge to any of the following, *if the court determines that the person has the financial ability to make the contribution surcharge* and the contribution surcharge is appropriate:
>
>    a. A private nonprofit organization that has as its primary purpose preventing crime . . . . (Emphasis added.)

¶ 10.   The question is whether WIS. STAT. § 973.06 acts to curtail the broad discretion conferred by WIS. STAT. § 973.01(5). A trial court's broad discretion is limited in that it still must be based on a correct view of the law. *See Torpen*, 248 Wis. 2d 951, ¶ 8. We must determine whether the court applied the correct legal standard to the facts, a matter subject to our de novo review. *State v. LeMay*, 155 Wis. 2d 202, 208, 455 N.W.2d 233 (1990).

¶ 11.   Although WIS. STAT. § 973.01 and WIS. STAT. § 973.06 are contained in the same chapter of the Wisconsin Statutes titled "Sentencing," the two statutes serve different purposes. Section 973.01(2) provides that extended supervision constitutes a portion of a defendant's bifurcated sentence, and subsection (5) authorizes a court to impose conditions of extended

supervision. When released to extended supervision, the defendant remains in the legal custody of the department and is subject to return to prison for service of all or a portion of the remaining bifurcated sentence in the event the extended supervision is revoked. WIS. STAT. § 302.113(8m)(a) and (9)(am). In short, extended supervision is part of the total sentence visited upon a defendant.

¶ 12. In contrast, a contribution surcharge under WIS. STAT. § 973.06 is a financial obligation that a trial court may tax against a defendant together with other costs and fees in the action. Such an obligation is not itself a sentence or a component of a sentence. Instead, it stands separate and apart from the underlying sentence and is not dependent on an underlying sentence for its validity. Therefore, we reject the linkage that Galvan urges between a contribution obligation imposed as a condition of extended supervision and a contribution surcharge taxed against a defendant.

¶ 13. Galvan further argues that the surcharge payment to MADD can be likened to a surcharge payment ordered as a condition of probation under WIS. STAT. § 973.09. Based on this premise, Galvan argues that we should apply the rational of *Amato* and other cases[2] holding that the specific statutes of WIS. STAT. ch. 973 limit a court's general discretion pertaining to

[2] *See, e.g., State v. Oakley,* 2000 WI 37, ¶ 2, 234 Wis. 2d 528, 609 N.W.2d 786 (payment of a fine from prior unrelated case prohibited as a condition of probation because WIS. STAT. § 973.07 specifically limits the court's means of collecting fines by incarceration), and *State v. Torpen,* 2001 WI App 273, ¶¶ 14, 16, 248 Wis. 2d 951, 637 N.W.2d 481 (payment of restitution owing on prior cases prohibited as a condition of probation because WIS. STAT. § 973.20 controls restitution).

conditions of probation under § 973.09. In *Amato*, the trial court ordered Amato to repay one-half of the cost of a special prosecutor, a cost not permitted under Wis. Stat. § 973.06. *Amato*, 126 Wis. 2d at 214–15. We held that the court was without statutory authority to order Amato to pay the cost either as a "reasonable and appropriate" condition of probation under the general language of § 973.09 or as an allowable cost under § 973.06 because expressly permitting as a general condition of probation a cost prohibited by § 973.06 would render the latter meaningless, effectively repealing it. *Amato*, 126 Wis. 2d at 214–16. We concluded that § 973.06, being more specific, controlled. *Amato*, 126 Wis. 2d at 217–18. Galvan contends that, as in *Amato*, the general extended supervision statute must either give way to § 973.06, or we will effectively repeal the latter.

¶ 14. While having some similarities, extended supervision and probation are not the same. *Amato* was decided in 1985, well before Wisconsin adopted "truth-in-sentencing" in 1999, which created the concept of a bifurcated sentence composed of a period of confinement followed by a period of extended supervision. *See State v. Trujillo*, 2005 WI 45, ¶ 3, 279 Wis. 2d 712, 694 N.W.2d 933; *State ex rel. Rupinski v. Smith*, 2007 WI App 4, ¶ 20, 297 Wis. 2d 749, 728 N.W.2d 1. The theory of probation is that one convicted of a crime who is responsive to supervision and guidance may be rehabilitated without being imprisoned. *State v. Hays*, 173 Wis. 2d 439, 445, 496 N.W.2d 645 (Ct. App. 1992). In many instances, probation commences on the heels of sentencing. It thus makes sense that the sentencing court must make an ability-to-pay determination in that situation. *See* Wis. Stat. § 973.09(1x)(a). However,

extended supervision, as part of a bifurcated sentence, "kicks in" at a later point after completion of the confinement portion of the sentence. *See* WIS. STAT. §§ 973.01(2), 302.113(2). In that setting, it makes sense that the extended supervision statute does not ask a court to predict a future status, often years off, that may be altered by any number of intervening factors.

¶ 15. Our reading of these statutes harmonizes and gives effect to each one, and safeguards a cardinal rule of statutory construction: that we avoid unworkable or unreasonable results. To superimpose the ability-to-pay requirements of WIS. STAT. § 973.06 relating to the taxing of costs, fees and surcharges on the extended supervision provisions of WIS. STAT. § 973.01(5) would obligate a sentencing court to speculate about the defendant's earning potential and property status years hence. The trial court here found it "very significant" that the condition to make the contribution to MADD becomes effective only after Galvan serves his eleven-year prison term because it gave Galvan over a decade to obtain job skills, enhance his education, increase his earning capacity, and address any drug or alcohol problems. The court also noted the possibility that a person could inherit a sum of money in the interim. We endorse these comments.

¶ 16. Nor are we persuaded that WIS. STAT. § 973.06 applies to all criminal sentences because the probation statute, WIS. STAT. § 973.09(1x)(a), invokes § 973.06. Section 973.09(1x)(a) provides:

> If the court places a person on probation, the court may require, under [WIS. STAT.] ch. 814, that the probationer make a contribution surcharge to an organization or agency specified in [WIS. STAT. §] 973.06(1)(f)1. if the

court determines that the probationer has the financial ability to make the contribution surcharge.

¶ 17. We read WIS. STAT. § 973.09(1x)(a) as meaning precisely what it says: that when a court places a person on probation, the court may order a contribution surcharge if it determines the probationer is able to pay it. Since the court here did not place Galvan on probation, we fail to see how this statute applies. Moreover, the legislature is presumed to know the status of existing law and to have chosen its words carefully. *Village of Slinger v. City of Hartford*, 2002 WI App 187, ¶ 14, 256 Wis. 2d 859, 650 N.W.2d 81. As WIS. STAT. § 973.06(1)(f)1. and § 973.09(1x)(a) demonstrate, when the legislature has intended that a sentencing court must make an ability-to-pay determination, it has said so. We do not think it our place to insert a similar requirement in the extended supervision statute, especially when, as we have explained, its absence makes sense. We conclude that the legislature intended the general statute, WIS. STAT. § 973.01(5), to prevail. *See Amato*, 126 Wis. 2d at 217.

¶ 18. Finally, we agree with the trial court that Galvan is not without a remedy if he finds himself actually, rather than hypothetically, unable to fulfill this condition of extended supervision. The court stated that if unforeseen problems preventing compliance arise after Galvan completes his confinement and is placed on extended supervision, he then could petition for relief. Requesting it now, the court said, suggests that Galvan "expects to be a failure during extended supervision." The trial court was correct. WISCONSIN STAT. § 302.113(7m)(a) and (e)1. expressly permit an inmate to petition the sentencing court to modify any

conditions it set within a year of the scheduled date of release to extended supervision.

¶ 19.   We conclude that Wis. Stat. § 973.01(5) authorized the trial court to order the payment to MADD as a condition of extended supervision without currently assessing Galvan's financial ability to pay eleven years hence. We affirm the judgment and order.

*By the Court.*—Judgment and order affirmed.