CITY OF MADISON, Plaintiff-Appellant,

v.

STATE of Wisconsin DEPARTMENT OF HEALTH SERVICES and Kitty Rhoades, Defendants-Respondents.

Court of Appeals

*No. 2016AP727. Oral argument December 14, 2016. —Decided March 9, 2017.*

2017 WI App 25

(Also reported in 895 N.W.2d 844.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Marci A. Paulsen*, assistant city attorney. There was oral argument by *Michael May*, city attorney, Madison.

On behalf of the defendants-respondents, the cause was submitted on the brief of and oral argument by *Jennifer L. Vandermeuse*, assistant attorney general, and *Brad D. Schimel*, attorney general.

Before Kloppenburg, P.J., Lundsten and Blanchard, JJ.

¶ 1. KLOPPENBURG, P.J. The emergency detention statute in Wisconsin's Mental Health Act sets out a statewide process for providing, on an emergency basis, treatment to individuals who are mentally ill, drug dependent, or developmentally disabled, and who meet certain other criteria set out in the statute. Wɪs. Stat. § 51.15(1) (2015–16).[1] Under Wɪs. Stat. § 51.15(2), local law enforcement officers may transport an individual for emergency detention and treatment to only two types of facilities: "a treatment facility approved by the [Department of Health Services] or the county department [of community programs], if the facility agrees to detain the individual, or a state treatment

---

[1] All references to the Wisconsin Statutes are to the 2015–16 version unless otherwise noted.

facility." The State of Wisconsin Department of Health Services has designated the Winnebago Mental Health Institute in Oshkosh as the state treatment facility that will accept custody of individuals transported for emergency detention and treatment under the statute. The City of Madison argues that, under the statute, the Department must also accept custody of individuals transported for emergency detention and treatment at the Mendota Mental Health Institute in Madison because Mendota is also a "state treatment facility" as that term is used in § 51.15(2).

¶ 2. As we explain, we conclude that under the only reasonable meaning of the statute, the Department has acted within its statutory authority to designate Winnebago as the state treatment facility that will accept custody of individuals transported for emergency detention and treatment under WIS. STAT. § 51.15(2). Accordingly, we affirm.

## BACKGROUND

¶ 3. In November 2014, the City filed a complaint for declaratory and injunctive relief against the State of Wisconsin Department of Health Services.[2] The City alleged that the Department acted in violation of and beyond its authority under Wisconsin's emergency detention statute by refusing to accept custody of individuals transported by City police officers to the Mendota Mental Health Institute for emergency detention and treatment, and instead requiring that the City transport all individuals to the Winnebago Mental

---

[2] The City named as defendants the State of Wisconsin Department of Health Services and the late Kitty Rhoades, in her official capacity as Secretary of the Wisconsin Department of Health Services. We generally refer to the named defendants collectively as the Department.

208

Health Institute for emergency detention and treatment. In its amended complaint the City alleged that the Department's action resulted in increased costs for the City.

¶ 4. The circuit court dismissed the City's complaint on cross-motions for summary judgment, concluding that the Department has not exceeded its authority under the statute because it has made at least one state treatment facility available to accept custody of individuals transported for emergency detention and treatment under Wis. Stat. § 51.15(2). The City appeals.

## DISCUSSION

¶ 5. The City argues that Wis. Stat. § 51.15(2) does not authorize the Department to designate Winnebago as the only state treatment facility that will accept custody of individuals transported for emergency detention and treatment. More specifically, as clarified at oral argument, the City argues that the statute provides that individuals may be transported for emergency detention and treatment to any of the state treatment facilities; therefore, Mendota, as one of six "state treatment facilities," cannot refuse to accept custody of such individuals. Following well-established rules of statutory construction, we disagree. In the sections that follow, we state those rules, review the relevant statutory scheme, and conclude that Wis. Stat. § 51.15(2), read in the context of that statutory scheme, authorizes the Department to designate Winnebago as the state treatment facility that will accept custody of individuals transported for emergency detention and treatment. In the course of our discussion, we address and reject the City's arguments to the contrary.

## I. Standard of Review

¶ 6. We review a circuit court's grant of summary judgment de novo. *Chapman v. B.C. Ziegler and Co.*, 2013 WI App 127, ¶ 2, 351 Wis. 2d 123, 839 N.W.2d 425. Here our review turns on the interpretation of a statute, which is a question of law that we also address de novo. *Juneau Cty. v. Associated Bank, N.A.*, 2013 WI App 29, ¶ 15, 346 Wis. 2d 264, 828 N.W.2d 262.

¶ 7. The purpose of statutory interpretation is to discern the intent of the legislature. *Id.*, ¶ 16. When we interpret a statute, we begin with the statute's plain language, because we assume that the legislature's intent is expressed in the words it used. *Id.*; *State ex rel. Kalal v. Circuit Court for Dane Cty.*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. "Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." *Kalal*, 271 Wis. 2d 633, ¶ 45. We interpret statutory language in the context in which it is used, in relation to the language of surrounding or closely related statutes, and in a reasonable manner, to avoid absurd or unreasonable results. *Id.*, ¶ 46. If this process of interpretation yields a plain meaning, the statute is unambiguous and we apply its plain meaning. *Id.* If a statute "is capable of being understood by reasonably well-informed persons in two or more senses," the statute is ambiguous, and extrinsic sources of statutory interpretation, such as legislative history, may be consulted to resolve the ambiguity. *Id.*, ¶¶ 47, 50.

## II. Wisconsin's Emergency Detention and Treatment Statutory Scheme

¶ 8. Wisconsin's Mental Health Act states that, as the policy of the state, "There shall be a unified system of . . . provision of services which will assure all people in need of care access to the least restrictive *treatment* alternative appropriate to their needs, and movement through all *treatment* components to assure continuity of care, within the limits of available state and federal funds . . . ." WIS. STAT. § 51.001 (emphasis added). Consistent with this policy, the purpose of Wisconsin's emergency detention statute, WIS. STAT. § 51.15, "is to provide, on an emergency basis, *treatment* by the least restrictive means" to individuals who "[a]re mentally ill, drug dependent, or developmentally disabled," "[a]re reasonably believed to be unable or unwilling to cooperate with voluntary treatment," and meet certain other criteria, such as evidencing a substantial probability of harm to the individual or others. WIS. STAT. § 51.15(1)(ag) and (ar) (emphasis added).

### A. The emergency detention and treatment process

¶ 9. The statute authorizes a law enforcement officer to take an individual into custody if the officer "has cause to believe that the individual is mentally ill, is drug dependent, or is developmentally disabled," and that any one of the other statutory criteria is met. WIS. STAT. § 51.15(1)(ar). The officer then contacts the county department of community programs in the county where the individual was taken into custody. WIS. STAT. § 51.15(2). "The county department may approve the detention only if . . . the county department reasonably believes the individual will not voluntarily consent to evaluation, diagnosis, and treat-

211

ment necessary to stabilize the individual and remove the substantial probability of physical harm, impairment, or injury to himself, herself, or others." WIS. STAT. § 51.15(2).

¶ 10. If the county department determines that the statutory criteria have been met and approves the need for detention, then the officer transports the individual to a treatment facility for detention. WIS. STAT. § 51.15(2). "Detention may only be in a treatment facility approved by the [Department of Health Services] or the county department, if the facility agrees to detain the individual, or a state treatment facility." WIS. STAT. § 51.15(2).

¶ 11. Upon arrival at the treatment facility, custody of the individual is transferred from the law enforcement officer to the facility. WIS. STAT. § 51.15(3). Upon admission to the treatment facility, the law enforcement officer must file with the facility and with the circuit court a statement of emergency detention containing information detailing the criteria supporting the detention.[3] WIS. STAT. § 51.15(5).

¶ 12. Filing the statement of emergency detention triggers involuntary commitment proceedings un-

---

[3] The statute provides a separate detention and treatment procedure for Milwaukee County in WIS. STAT. § 51.15(4) and (4m). Because this case does not concern Milwaukee County, we reference only WIS. STAT. § 51.15(5). The City does not contest the Department's assertion that the two procedures are not meaningfully different for the purposes of this appeal.

The statute also provides that a treatment director at an approved treatment facility may take a voluntary patient into custody and sign a statement of emergency detention in the same manner as the statute authorizes a law enforcement officer to act. WIS. STAT. § 51.15(10). The parties do not identify, and we do not discern, any aspect of this provision that alters our analysis.

der the involuntary commitment for treatment statute, WIS. STAT. § 51.20. *See* WIS. STAT. § 51.15(5) (a statement of emergency detention "has the same effect as a petition for commitment under s. 51.20"). The circuit court must hold a hearing within seventy-two hours to determine whether there is probable cause to believe the allegations in the statement of emergency detention. WIS. STAT. §§ 51.15(5), 51.20(7). If the court finds probable cause, then the individual is examined and, if appropriate, treatment is recommended. WIS. STAT. § 51.20(9). After a final hearing or a jury trial, the court has disposition options that include dismissal, inpatient commitment, and outpatient care.[4] WIS. STAT. § 51.20(13)(a)1.-3.

### B. *Facilities specified for detention and treatment*

¶ 13. As noted, "[d]etention may only be in a treatment facility approved by the [Department of Health Services] or the county department, if the facility agrees to detain the individual, or a state treatment facility." WIS. STAT. § 51.15(2).

¶ 14. A " '[t]reatment facility' means any publicly or privately operated facility or unit thereof providing treatment of alcoholic, drug dependent, mentally ill or developmentally disabled persons." WIS. STAT. § 51.01(19).

¶ 15. A " '[s]tate treatment facility' means any of the institutions operated by the [Department of Health Services] for the purpose of providing diagnosis, care or treatment for mental or emotional disturbance,

---

[4] The statute provides additional possible dispositions for inmates and individuals who committed certain violations. *See* WIS. STAT. § 51.20(13)(a)4.-4m., (cm), (cr), (ct), (cv). These provisions are not relevant for the purposes of this appeal.

213

developmental disability, alcoholism or drug dependence and includes but is not limited to mental health institutes." WIS. STAT. § 51.01(15).

¶ 16. Mendota and Winnebago are Wisconsin's two mental health institutes. *See* WIS. STAT. §§ 46.03(1), 51.05. The Department operates four other "state treatment facilities," each providing specialized services as directed by statute: the Sand Ridge Secure Treatment Center, a secure mental health facility that serves sexually violent persons committed under WIS. STAT. ch. 980 and is located in Mauston; and the Northern, Central, and Southern Wisconsin Centers for the Developmentally Disabled, which serve adults and children with intellectual and developmental disabilities and are located in Chippewa Falls, Madison, and Union Grove, respectively. *See* WIS. STAT. §§ 46.03(1) (directing the Department to "[m]aintain and govern" the two mental health institutes, the secure mental health facility, and the centers for the developmentally disabled), 46.048 (directing the Department to establish, "maintain[] and operate[]" the Central Wisconsin Center for the Developmentally Disabled), 46.055 (directing the Department to "establish and operate" a secure mental health facility to serve sexually violent persons committed under WIS. STAT. ch. 980), 51.06 (directing the Department to "provide services" to developmentally disabled individuals at the northern, central and southern centers for developmentally disabled).

¶ 17. Both parties explained at oral argument that, in practice, if no local approved "treatment facility" under WIS. STAT. § 51.15(2) is available to accept custody of an individual transported for emergency detention and treatment, a "state treatment facility" "stands as a backstop" or "facility of last resort."

214

*III. The Department Acted Within its Statutory Authority to Designate Winnebago as the State Treatment Facility That Will Accept Custody of an Individual for Emergency Detention and Treatment*

¶ 18. In briefing, it appeared that the City was, on appeal, arguing that we should interpret the statute to mean that the Department must accept custody of individuals transported for emergency detention and treatment at both mental health institutes, Winnebago and Mendota, not at all six state treatment facilities. At oral argument, we questioned the basis on which the City was singling out Mendota and Winnebago from the other four state treatment facilities, seemingly arguing in its briefs that the other four are not similarly required to accept custody of individuals transported for emergency detention and treatment.

■

¶ 19. At oral argument the City suggested for the first time that another statute, Wis. Stat. § 51.05(1), supports its singling out Mendota and Winnebago from the other four state treatment facilities. That statute designates the two state mental health institutes as Mendota and Winnebago, and provides that the Department "divide the state by counties into 2 districts, . . . arranging them with reference to the number of patients residing in them at a given time, the capacity of the institutes and the convenience of access to them." As we understand the City's argument, because Wis. Stat. § 51.05 requires that the Department divide the state into two districts, both institutes must accept patients under emergency detention, with one institute accepting patients from one district and the other from the other district. Alternatively, the

215

City argued that because Wis. Stat. § 51.05 treats the two mental health institutes differently from the other state treatment facilities, that allows this court to limit our interpretation of "a state treatment facility" in Wis. Stat. § 51.15(2) to the mental health institutes.

¶ 20. We reject both arguments as forfeited because they were not raised in the circuit court. *See Schill v. Wisconsin Rapids Sch. Dist.*, 2010 WI 86, ¶ 45 & n.21, 327 Wis. 2d 572, 786 N.W.2d 177 (explaining that issues not raised in the circuit court are forfeited, and supporting the proposition that appellate courts generally do not address forfeited issues). Forfeiture is particularly apt here because there was no development of any facts to inform an interpretation of Wis. Stat. § 51.05(1), either alone or in connection with Wis. Stat. § 51.15(2).

¶ 21. We also observe that these new arguments plainly lack merit. First, they are off-topic. Wisconsin Stat. § 51.05(1) addresses "mental health institutes," but our task here is to interpret the meaning of the legislature's use in Wis. Stat. § 51.15(2) of the term "a state treatment facility." Just because the legislature refers only to the two mental health institutes in Wis. Stat. § 51.05(1), does not mean that the legislature's use of "a state treatment facility" in Wis. Stat. § 51.15(2) was intended as a reference to the two mental health institutes. To the contrary, if that was the legislature's intent it would not have used the more general term "state treatment facility." Second, nothing in Wis. Stat. § 51.05(1) requires that the Department divide the state into two districts for the purpose of accepting custody of individuals transported for emergency detention and treatment at mental health institutes.

¶ 22. Nor do we discern any logic in the City's argument that the "different" treatment of mental health institutes in WIS. STAT. § 51.05(1) provides a basis for limiting the meaning of "a state treatment facility" in WIS. STAT. § 51.15(2) to only the two mental health institutes. There are also statutes that treat Sand Ridge and the Centers differently, *see* WIS. STAT. §§ 46.055, 51.06, 980.065(1m), but the City does not argue that those statutes provide a basis for limiting "a state treatment facility" to mean only Sand Ridge and the Centers. Rather, the City seems to argue that the different treatment of Sand Ridge and the Centers provides a basis for excluding them from designation as "a state treatment facility" in WIS. STAT. § 51.15(2). However, the City does not explain why different treatment in other statutes provides a basis for interpreting "a state treatment facility" in WIS. STAT. § 51.15(2) to include only some of the facilities differently treated while excluding the other facilities differently treated.

¶ 23. At oral argument, the City conceded that while it seeks as relief a decision that applies only to the Mendota and Winnebago mental health institutes, "the logical extension of [its] argument" is that the Department must accept custody of such individuals at all six state treatment facilities. Consistent with the City's concession, the Department took the position that "the dispute is whether [the Department] has to accept [such individuals] at every state treatment facility or whether it has the authority to designate a single state treatment facility." Accordingly, we proceed to address the issue of whether the statute means that the Department must accept custody of such individuals at all state treatment facilities. We now

explain why we conclude that, under the only reasonable meaning of the statute when read in context with other related statutes, the answer to that question is no.

¶ 24. The City's argument focuses on the phrase "a state treatment facility" in WIS. STAT. § 51.15(2), and more narrowly on the word "a." Specifically, the City argues that "a" means "any" of the state treatment facilities, and, therefore, no state treatment facility may refuse to accept custody of those individuals. The Department argues that the phrase "a state treatment facility" means whichever state treatment facilities it designates, so long as it designates at least one. We conclude that the phrase "a state treatment facility," read in isolation, might be ambiguous. However, when we look at the statute as a whole and read it in the context of related statutes, as *Kalal* instructs us, there is no ambiguity. It is clear that the Department's interpretation is the only reasonable meaning of the statute. *See Kalal*, 271 Wis. 2d 633, ¶ 46 ("statutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results").

¶ 25. We start with the purpose of the statutory scheme. *See State v. Hanson*, 2012 WI 4, ¶ 17, 338 Wis. 2d 243, 808 N.W.2d 390 (" 'Context and [statutory] purpose are important in discerning the plain meaning of a statute.' We favor an interpretation that fulfills the statute's purpose." (citations omitted)); *Alberte v. Anew Health Care Services, Inc.*, 2000 WI 7, ¶ 10, 232 Wis. 2d 587, 605 N.W.2d 515 (courts need

not adopt a literal or usual meaning of a word when acceptance of that meaning would thwart the obvious purpose of the statute).

¶ 26. As noted at the start of our discussion, the emergency detention statute is part of the Mental Health Act, and the stated legislative purpose of both is to assure the most effective treatment by the least restrictive means. Wis. Stat. §§ 51.001 and 51.15(1)(ag). From its initial statement of purpose, "to provide, on an emergency basis, *treatment,*" the focus throughout the emergency detention statute is on connecting an individual in need of emergency treatment, with that treatment. Wis. Stat. § 51.15(1)(ag) (emphasis added). The specific statute at issue here, Wis. Stat. § 51.15(2), is premised on a finding of, in the words of the statute, "the need for detention, and for evaluation, diagnosis, and *treatment,*" and the statute further provides that the detention "may only be" in a "*treatment*" facility of one of the two types specified in the statute. (Emphasis added.)

¶ 27. We look to other related statutes to answer the question of whether the Department may designate which of the second type of treatment facilities, "a state treatment facility," will accept custody of individuals transported for emergency detention and treatment. All state department heads have broad authority to organize the functions of their departments under Wis. Stat. § 15.04(1)(a), which generally provides that every department head shall "plan, direct, coordinate and execute the functions vested in the department." The department at issue here has more specific authority to oversee the operation of the state treatment facilities under Wis. Stat. § 46.03(1), which provides that the Department shall "[m]aintain and govern" the two mental health institutes and the four

219

other state treatment facilities: the Sand Ridge Secure Treatment Center, which specializes in treating sexually violent persons, and the Northern, Central, and Southern Wisconsin Centers, which provide treatment for individuals with developmental disabilities. *See* Wis. Stat. §§ 46.048, 46.055, 51.06.

¶ 28. In the context of the Department's authority under Wis. Stat. § 46.03(1) to govern the state treatment facilities within the parameters of the different purposes that the facilities are directed to serve, it makes sense to include within that context the authority to designate one of the facilities for receiving and treating individuals under emergency detention at a state treatment facility under Wis. Stat. § 51.15(2). The City's reading to the contrary defeats the statutory purpose and is unreasonable. *See Kalal*, 271 Wis. 2d 633, ¶ 46 (we interpret statutory language in a reasonable manner to avoid absurd or unreasonable results).

¶ 29. It is unreasonable to assume that the legislature in Wis. Stat. § 51.15(2) intended to force the Department to organize itself and expend the resources so that one particular function—emergency detention and treatment—is performed at all six state treatment facilities, when other statutes authorize the Department to use its discretion to organize those facilities in a manner consistent with the facilities' specified statutory functions, and consistent with the overriding statutory purpose of providing a unified system of treatment as resources allow.

¶ 30. The City's suggestion that we can limit our holding to an interpretation of the statutes that applies only to Winnebago and Mendota, underscores the unreasonableness of its reading of the statute. The City's very framing of its argument at oral argument

—that under its reading of the statute it may transport an individual to any state treatment facility for emergency detention and treatment, but "all [this court] need[s] to decide" is that the Department must accept such individuals at both state mental health institutes —implies that the City itself questions the unreasonableness of requiring the Department to accept the individuals at issue here at all of the state treatment facilities, which include the Sand Ridge Secure Treatment Center, which specializes in treating sexually violent persons, and the Northern, Central, and Southern Wisconsin Centers, which provide treatment for individuals with developmental disabilities.

¶ 31. The City attempts to deal with our concern about treatment by arguing that under its construction of Wis. Stat. § 51.15(2), the state could accept custody at all six state treatment facilities but then promptly transport the individuals to the facility that the Department has designated for treatment.[5] However, the statute speaks not in terms of detention and *transport,* but in terms of detention and *treatment.* The legislative intent is clearly to provide that an individual in need of emergency detention and treatment be taken to a facility that both detains and treats.

¶ 32. The City argues that its interpretation is supported by the legislature's use of the word "agrees" in Wis. Stat. § 51.15(2). The statute provides that an

---

[5] The City properly acknowledged at oral argument that it is not our role to consider the policy implications relating to which entity bears the costs of transport. Even if we had a complete picture on these issues, which we lack, this would involve policy determinations to be resolved by other branches of government.

individual may be transported to an approved treatment facility for emergency detention and treatment only if the facility "agrees" to accept such individuals. No such option of agreeing, so the argument goes, applies to a state treatment facility. Therefore, according to the City, all state treatment facilities must accept an individual for emergency detention and treatment. To interpret the statute otherwise, according to the City, would require the insertion into the statute of such language as "if the Department agrees" or "as designated by the Department." However, as explained above, the Department's authority to designate the different operations and functions of the state treatment facilities is already part of the statutory scheme. WISCONSIN STAT. § 51.15(2), read in the context of that statutory scheme, makes it clear that the Department does not have the option to designate *no* state treatment facility that will accept custody of an individual transported for emergency detention and treatment. Rather, by designating at least one state treatment facility that will accept those individuals, the Department complies with the statute by making available "a state treatment facility" where those individuals may be transported.

¶ 33. Finally, the City argues that a 1992 Attorney General opinion supports its argument that *all* state treatment facilities must accept individuals for emergency detention and treatment. In 80 Wis. Op. Att'y Gen. 299 (1992), the Attorney General opined, broadly, that the "public facilities" then listed in the statute (namely: an approved hospital, an approved public treatment facility, a center for the developmentally disabled, and a state treatment facility, WIS. STAT. § 51.15(2)(a), (b), (c)) may not refuse to accept individuals brought to them under emergency detention. *Id.* at

303. However, that opinion addressed an issue and facts different from those on appeal here. *Id.* at 299. Also, in answering that question, the opinion relied in part on the fact that, under the version of the statute then in effect, detention could occur without knowledge of the county department, with the apparent result that facilities sometimes would ask the sheriff, who had chosen where to transport the individuals, to transport individuals to other facilities. *Id.* at 303–4 (noting, "It is therefore important that the law enforcement officer who detains an individual make a good faith effort to transport him or her to a facility that provides the type of treatment that the individual apparently needs."). In 2013 Wis. Act 158, § 4, the statute was amended to require county approval, thereby removing one of the bases for the opinion.[6] In sum, we do not find the Attorney General's opinion persuasive in this context. *See State ex. rel. North v. Goetz*, 116 Wis. 2d 239, 245, 342 N.W.2d 747 (Ct. App. 1983) ("an Attorney General's opinion . . . is only entitled to such persuasive effect as a court deems the opinion warrants").

¶ 34. In sum, we conclude that the legislature intended in Wis. Stat. § 51.15(2), read in the context of related statutes, to allow the Department to designate which state treatment facilities will accept custody of individuals transported for emergency detention and treatment under that statute, so long as the Department designates at least one of those facilities for these purposes. *See Kalal*, 271 Wis. 2d 663, ¶ 44 ("the pur-

---

[6] In 2015 Wis. Act 55, § 1881, the statute was amended again to require that county approval be premised on a crisis assessment by a physician, psychiatrist, or mental health professional.

pose of statutory interpretation is to determine what the statute means so that it may be given its full, proper, and intended effect."). Because Winnebago is by definition "a state treatment facility," *see* WIS. STAT. §§ 51.01(12) and (15) and 46.03(1), the Department has complied with the statute by making "a state treatment facility," namely Winnebago, available to accept custody of an individual transported for emergency detention and treatment.

## CONCLUSION

¶ 35. For the reasons stated, we conclude that the Department has acted within its statutory authority to designate Winnebago as the state treatment facility that will accept custody of individuals transported for emergency detention and treatment under WIS. STAT. § 51.15(2). Accordingly, we affirm.

*By the Court.*—Order affirmed.