COURT OF APPEALS
DECISION
DATED AND FILED

July 21, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.   2018AP83**

**STATE OF WISCONSIN**

Cir. Ct. No.  2012CF133

**IN COURT OF APPEALS
DISTRICT III**

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

V.

FRANK TYRONE WHITEHEAD,

   DEFENDANT-APPELLANT.

   APPEAL from an order of the circuit court for Douglas County: GEORGE L. GLONEK, Judge.  *Affirmed*.

   Before Stark, P.J., Hruz and Seidl, JJ.

   **Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Frank Whitehead, pro se, appeals from the circuit court's denial of his WIS. STAT. § 974.06 (2017-18)[1] postconviction motion without a hearing. We conclude all claims Whitehead attempts to raise are barred. Consequently, we affirm.

## BACKGROUND

¶2 Whitehead was charged with one count of first-degree sexual assault of an eleven-year-old child after the victim alleged Whitehead had performed oral sex on her, and with one count of making threats to injure for allegedly threatening the victim that "if you tell anybody I will make you disappear." At trial, Whitehead contended that the victim and her mother falsely accused him of the sexual assault. Defense counsel's strategy was to highlight inconsistencies in the victim's testimony and to show that the victim and her mother had changed their stories about the assault throughout the course of the investigation.

¶3 The victim testified at trial that Whitehead was a neighbor, and that she occasionally went to his house to play with his stepsons or to earn extra money by doing chores. On the day of the alleged assault, the victim testified she and her younger brother went to Whitehead's house. When they arrived, Whitehead was the only person home. Whitehead told them that his stepsons had gotten new bicycles, and he asked whether they would like to buy the old bikes. The victim's brother then went to Whitehead's shed and picked out a bike. Whitehead suggested he ride the bike home and ask his mother to come back and pay for it. Whitehead asked the victim to come in his house and do some work for him.

---

[1] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

¶4    The victim testified that her brother rode his bike home, and she went inside Whitehead's house with him. Once inside, Whitehead forced her down onto a bed, and he performed oral sex on her, and then forced her to touch his testicles. She managed to get away from Whitehead and run out of the house, at which point Whitehead threatened to "make her family disappear" if she told anyone about the assault.

¶5    The victim testified that when she arrived home, her mother drove her back to Whitehead's house to pay for her brother's bike. The victim testified that she stayed in the van while her mother picked out a bike for her. Whitehead said the victim's mother could pay off the bike by having the victim do chores for him. When the victim's mother relayed that offer to the victim, the victim said she needed to go home, and she later made excuses to avoid going back to Whitehead's residence.

¶6    On cross-examination of the victim's mother, the defense elicited testimony that before the assault, she had warned the victim not to be alone with Whitehead, but did not tell the victim why. Defense counsel also challenged the mother with inconsistent statements contained in a typewritten statement she prepared before reporting the incident to police, her testimony at the preliminary hearing, and her testimony at a restraining order hearing. On those occasions, the mother stated that she left the victim with Whitehead after purchasing the bikes. At one point, the mother admitted her recollection of these events was unclear, and at another point she said that she was mistaken and "remembered … it inaccurately" when she previously stated that she had left the victim alone after the transaction.

¶7    Whitehead was the only defense witness. He denied that the assault occurred, and he also denied being alone with the victim on the day of the alleged assault. He testified the mother drove to his house and asked him if he still had bikes for sale. After the children—both the victim and her brother—picked out bikes, the mother paid him and then drove away, and the children rode their bikes home. Whitehead denied asking the victim to stay at his house to do chores. He also testified that the victim and her brother had not been at his house at any other time on the day in question.

¶8    The jury found Whitehead guilty of the charged offenses. We upheld Whitehead's conviction on a direct appeal and also affirmed an order denying his WIS. STAT. RULE 809.30 postconviction motion. *See **State v. Whitehead***, No. 2014AP460-CR, unpublished slip op. (WI App Nov. 11, 2014). Whitehead had argued that his trial attorney was ineffective, and he further argued for a new trial in the interests of justice. ***Id.***, ¶1.

¶9    Whitehead subsequently filed a pro se petition for a writ of habeas corpus, pursuant to ***State v. Knight***, 168 Wis. 2d 509, 512-13, 484 N.W.2d 540 (1992). This petition again alleged ineffective assistance of counsel. We denied the petition ex parte. *See **State ex rel. Whitehead v. Douma***, No. 2016AP463-W, unpublished slip op. (WI App Apr. 21, 2017).

¶10    Whitehead then filed a pro se WIS. STAT. § 974.06 postconviction motion, asserting multiple claims of ineffective assistance by his postconviction and trial counsel. Whitehead also filed an addendum to the § 974.06 motion, two supplements to the motion, and a "motion to compel production of documents." The circuit court denied Whitehead's motions without an evidentiary hearing. A motion for reconsideration was also denied. Whitehead now appeals.

## DISCUSSION

¶11 Whitehead's briefs on appeal are very difficult to follow. We construe his arguments to reassert five claims raised in his WIS. STAT. § 974.06 motion and supplements.[2] We conclude one claim is barred as having been previously litigated. *See* § 974.06(4); *State v. Witkowski*, 163 Wis. 2d 985, 990, 473 N.W.2d 512 (Ct. App. 1991). The remaining four claims are barred because Whitehead cannot show that these claims are clearly stronger than the claims postconviction counsel raised during the direct appeal.[3] *See State v. Romero-Georgana*, 2014 WI 83, ¶4, 360 Wis. 2d 522, 849 N.W.2d 668.

¶12 We first address Whitehead's argument that his postconviction counsel was ineffective for failing to address whether his trial counsel erred by not eliciting testimony from Whitehead that months after the alleged assault but one week before Whitehead was accused of sexually assaulting the victim, the victim's mother made a threat to "get" Whitehead and used racial slurs. Whitehead argues that the victim and her mother conspired to falsely accuse him of sexual assault in "[r]etaliation from [sic] a fight between me and the Mother."

---

[2] To the extent Whitehead raises any additional arguments, they are inadequately developed to warrant consideration. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992).

[3] Postconviction and appellate counsel alleged in the WIS. STAT. RULE 809.30 motion and during the direct appeal that Whitehead's trial counsel was ineffective for failing to: (1) question Whitehead about the victim's mother's threats to "get" him, made one week before he was charged with assaulting her daughter; (2) introduce a sheriff's department report stating that another county had investigated Whitehead for sexually assaulting the victim's sister and had "close[d] the[] case without further action"; and (3) call the victim's nine-year-old brother as a witness at trial.

¶13  In our decision upholding Whitehead's conviction on his direct appeal, we concluded that Whitehead failed to show prejudice from any alleged error of his trial counsel in this regard.  We noted that testimony about the alleged threat came into evidence during the redirect examination of the victim's mother.  Specifically, we stated:

> [The victim's mother] testified Whitehead claimed during the restraining order hearing that she had threatened him and called him an "F'ing N word[.]"  Thus, contrary to Whitehead's assertion, the jury was aware of the alleged threat.  As a result, it was not reasonably probable the result of Whitehead's trial would have been different had defense counsel asked Whitehead about the [threat.[4]]

¶14  Whitehead's current argument—that his postconviction counsel was ineffective for failing to raise the issue of the "threat" in the circuit court—is merely an attempt to rehash the previously adjudicated claim of Whitehead's trial counsel's ineffectiveness on this basis.  A matter once litigated may not be relitigated in a subsequent postconviction motion no matter how artfully the defendant may rephrase the issue.  *See* WIS. STAT. § 974.06(4); *Witkowski*, 163 Wis. 2d at 990.  Whitehead's challenge to this issue is therefore procedurally barred as having been previously litigated.

¶15  The next issue involves Whitehead's contention that his postconviction counsel was ineffective for not raising a claim related to photographs that his girlfriend purportedly gave to a defense investigator but that

---

[4] In our decision affirming the conviction on direct appeal, we stated that Whitehead's reply brief noted the victim's mother had incorrectly testified that the racial slur was directed at Whitehead rather than at his stepsons.  However, we concluded the jury was aware the threat was made to Whitehead, regardless of the target of any racial slurs.

were not presented at trial.[5] Whitehead's arguments in this regard are undeveloped and lack citations to the record on appeal. For example, Whitehead does not explain in his brief what the purported photographs would have shown that would have made a difference to his case. The only clear allegation that Whitehead made against his postconviction counsel in the WIS. STAT. § 974.06 motion is that counsel should have subpoenaed the investigator to testify about what happened to the photographs. This allegation alone, however, would also not entitle Whitehead to a new trial, as it does not show the photographs' relevance.

¶16 But even on the merits as best we can discern them, Whitehead's contention fails. In his WIS. STAT. § 974.06 motion and supplemental filings, Whitehead appeared to assert that his girlfriend gave the defense investigator a bag containing over 200 photographs. These photographs are now apparently lost. Whitehead references a letter in which his trial counsel informed Whitehead that the photographs were not in his possession, and that the investigator left them with the jail after going through them with Whitehead. The letter from trial counsel stated, "My recollection is that the photos were obtained after the trial but before sentencing." The letter also indicated that the jail claimed it did not have the photographs.

¶17 Whitehead alleges the bag contained four photographs that would have impugned the credibility of the victim and her mother. The four alleged photographs included: (1) a picture of the victim and her brother smiling and

---

[5] While Whitehead's WIS. STAT. RULE 809.30 motion was still pending, he filed a pro se motion for "contempt of court," referencing a missing "bag full of photos." In the motion, Whitehead asserted the bag included photos that would assail the credibility of the victim and her mother. Whitehead suggested in the motion that his trial attorney lost the photos. The circuit court denied the motion.

standing with their bikes on the day of the alleged assault; (2) a picture of the victim and her brother taken after the date of the alleged assault following a birthday party at Whitehead's home; (3) a picture of the victim and another person outside of Whitehead's bedroom window, taken after the date of the alleged assault; and (4) a picture from inside Whitehead's house that Whitehead suggests contradicted the victim's description at trial about the home's interior.

¶18 The circuit court found that three of the four purported photographs "would have had minimal, if any, relevance at trial." The court found "clearly the most relevant" photograph was the one of the victim smiling with her brother behind the bikes they had just purchased on the date of the alleged assault. Whitehead argues this photo discredits the testimony that the victim stayed in the van while her mother paid for the bikes. This photograph, however, would not have changed the outcome of the trial, where the jury was already presented with conflicting stories about the details of the bicycle transaction. In addition, pictures showing the victim at Whitehead's home after the date of the alleged assault would have minimal, if any, probative value. Whitehead himself confirmed on cross-examination that the victim, her brother, and other children frequently played at Whitehead's house and in nearby woods. And the victim did not testify at trial that she never returned to Whitehead's home after the assault.

¶19 Moreover, the circuit court stated that it was "not convinced the purported [four] photographs even exist." As the court noted, Whitehead did not testify at trial about the existence of the photographs. Nor did he allege in his WIS. STAT. § 974.06 motion that his counsel was aware of the four photographs before trial, but then declined to offer them into evidence. Whitehead also failed to allege that, before sentencing, the four photographs were brought to defense counsel's attention, but counsel then declined to use them. The court also noted,

in denying the § 974.06 motion, that Whitehead did not mention taking a photograph of the children with their bikes during his lengthy statement at the sentencing hearing.

¶20    Whitehead cannot show that any unspecified claim of his postconviction counsel's ineffectiveness related to the photographs is clearly stronger than the issues raised on direct appeal because such a claim rests on Whitehead's unsupported assertions about the existence and contents of the four photographs. Because these four photographs appear to be lost, and Whitehead apparently failed to make copies of them prior to turning them over to the defense investigator, there is no way to verify Whitehead's claims about their contents. For these reasons, Whitehead's claim that his postconviction counsel was ineffective for failing to raise an unspecified claim relating to the purported photographs fails because Whitehead has not shown this claim is clearly stronger than the claims raised on direct review.

¶21    Whitehead also appears to argue that his postconviction counsel rendered ineffective assistance by failing to allege that Whitehead's trial counsel was ineffective for eliciting testimony about the victim's sister's allegations that Whitehead had previously assaulted her at a Minnesota casino. The risk associated with such other acts evidence is that the jurors may improperly conclude from the prior bad acts that the defendant had the propensity to commit the charged act. *See State v. Fishnick*, 127 Wis. 2d 247, 256, 378 N.W.2d 272 (1985). Therefore, if other acts evidence is sought to be admitted, the State must offer the evidence for a proper purpose, and a court must deny the State's request to present such evidence if its prejudicial effect substantially outweighs its probative value. *See State v. Sullivan*, 216 Wis. 2d 768, 772-73, 576 N.W.2d 30 (1998).

9

¶22    But here, the defense—not the State—insisted on introducing the victim's sister's allegations.  Prior to trial, the State announced that it did not intend to present evidence of the sister's allegations, and the State moved to prohibit the defense from presenting such evidence as well.  Defense counsel opposed the State's motion, arguing that the victim's and her mother's awareness of the sister's allegations went to the crux of Whitehead's defense.  Whitehead's position was that he was never alone with the victim in his house on the day of the alleged assault.  In addition, based on the mother's testimony that she told the victim never to be alone with Whitehead, counsel argued it was "unbelievable" that the mother would have left the victim with Whitehead that day.  The circuit court denied the State's motion, and it permitted Whitehead to present evidence of the sister's allegations.

¶23    Counsel's choice to use the sister's allegations in this way bolstered Whitehead's claim that he was never alone with the victim in the house and, as such, it was a considered strategic decision that is virtually unassailable on appeal. *See State v. Westmoreland*, 2008 WI App 15, ¶20, 307 Wis. 2d 429, 744 N.W.2d 919 (2007).  Whitehead fails to show that a claim of ineffectiveness based on counsel eliciting this testimony was clearly stronger than the issues raised in the postconviction motion and on direct appeal.

¶24    In another difficult-to-discern argument, Whitehead contends that his counsel should have investigated and presented impeachment evidence at trial relating to a pair of underwear that Whitehead allegedly gave to the victim, and to

statements made by the mother in a typewritten letter[6] about ordering some boys off of her property. Whitehead fails to demonstrate that such a claim of ineffective assistance would have merit, much less that it would have been clearly stronger than the claims actually raised.

¶25 As the circuit court noted, the State did not present evidence at trial that Whitehead gave the victim a pair of underwear. Whitehead appears to suggest that the underwear may have belonged to the victim's sister, and he makes various, undiscernible arguments about why the claim that he gave the victim the underwear is not credible. Suffice it to say, counsel left this matter well enough alone by not introducing at trial a potentially damaging allegation that Whitehead gave the eleven-year-old victim a pair of underwear.

¶26 Similarly, the State did not present evidence at trial that the victim's mother wrote a letter alleging that she ordered boys off of her property. Whitehead appears to argue that the letter contained inaccuracies, and he also appears to suggest that the statement somehow shows that the victim and her mother falsely accused him. But Whitehead fails to show how introduction of such a statement would have damaged the victim's or her mother's credibility so as to alter the outcome of the trial.

¶27 Finally, Whitehead appears to assert that his postconviction counsel should have argued that trial counsel was ineffective for not raising a challenge to the racial composition of the jury, pursuant to *Batson v. Kentucky*, 476 U.S. 79

---

[6] It is unclear to whom the letter was addressed. In his brief, Whitehead states: "My Trail [sic] Attorney was in possession of this letter and when he gave me a copy of it …." At another point, Whitehead suggests the victim's mother presented the letter "to detective Hoyt …."

(1986). In that case, the Court held that the State may not use race as a basis for its peremptory challenges. *Id.* at 80. The circuit court properly concluded that this case does not implicate *Batson*.

¶28 Here, the thirty-eight-member jury pool did not include any nonwhite members. Its members were selected at random from a list of Douglas County residents with valid, government-issued identification. As the circuit court noted, census data showed that only one percent of Douglas County's voting age population was of Whitehead's race. Whitehead provides no authority showing that a jury pool chosen at random in such circumstances violates the requirement that a jury pool represent a fair cross-section of the community. S*ee Berghuis v. Smith*, 559 U.S. 314, 322-23, 329-30 (2010).[7] Accordingly, Whitehead fails to show that a claim challenging the racial makeup of the jury would have been clearly stronger than the claims raised by his postconviction counsel on direct review. The claim is therefore also barred.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[7] In his brief-in-chief, Whitehead makes an unsupported claim that one of the members of the jury wore a confederate flag shirt. This claim was not included in his WIS. STAT. § 974.06 motion or supplemental filings, and issues not raised in the circuit court are deemed forfeited. *See City of Madison v. DHS*, 2017 WI App 25, ¶20, 375 Wis. 2d 203, 895 N.W.2d 844. In any event, the record on appeal fails to support this allegation.